## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| COMMITTEE FOR A FAIR AND BALANCED MAP, et al.<br><br>*Plaintiffs*,<br>vs.<br><br>ILLINOIS STATE BOARD OF ELECTIONS, et al.<br><br>*Defendants*. | Case No. 1:11-cv-05065<br><br>Circuit Judge John D. Tinder<br>District Judge Joan H. Lefkow<br>District Judge Robert L. Miller, Jr. |

### MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES' MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER

Richard J. Prendergast
Michael T. Layden
Special Asst. Attorneys General
Richard J. Prendergast, Ltd.
111 W. Washington St., Suite 1100
Chicago, Illinois 60602
(312) 641-0881

Eric M. Madiar
Special Asst. Attorney General
605 State House
Springfield, IL 62706
(217) 782-2156

David W. Ellis
Special Asst. Attorney General
402 State House
Springfield, IL 62706
(217) 782-3392

## Introduction

In this action, Plaintiffs seek to invalidate, in whole or in part, Public Act 97-14, the 2011 congressional redistricting plan (the "Illinois Map" or the "Map"). Plaintiffs have served thirty subpoenas on various members and staff of the Illinois Senate and House of Representatives (collectively the "Illinois General Assembly") for the production of documents concerning the preparation, drafting, and passage of that law. In addition to the thirty subpoenas served to date for the production of documents, Plaintiffs recently indicated that they also intend on serving subpoenas for depositions for at least a sub-set of the individuals who received subpoenas for documents. Plaintiffs' subpoenas should be quashed because the Members and their staff are protected by legislative immunity. This long-recognized doctrine applies not only to immunity from liability but also as a privilege against disclosure of documents and as a testimonial privilege at deposition and trial. It is an absolute privilege from any inquiry into the legislative operations of the Illinois General Assembly. It protects both elected members and staff. And as numerous decisions across the country have held, it clearly applies in the context of redistricting, a fundamental legislative function of the State. Thus, Plaintiffs' subpoenas for documents and depositions should be quashed and a protective order should be entered to bar depositions and other discovery protected by legislative immunity.

At the outset, we note a jurisdictional issue of which this Court should be aware. Twenty-five of the subpoenas served by Plaintiffs were issued out of the United States District Court for the Central District of Illinois ("Central District"), due to the fact that most of the witnesses subpoenaed for documents (whom Plaintiffs' Counsel has indicated they will also seek to depose) reside in Springfield, Illinois. Five of the Plaintiffs' subpoenas were issued out of the United States District Court for the Northern District of Illinois ("Northern District"). This Motion is directed towards the five subpoenas issued by the Plaintiffs from the Northern District.

1

To expedite a resolution to this matter, counsel for those who received subpoenas issued from the Central District of Illinois the have informed Plaintiffs' counsel that the subpoenas *duces tecum* issued from the Northern District of Illinois and served respectively on the Office of the Senate President and Office of the Speaker of the House of Representatives in Chicago capture all of the documents falling within the scope of the Central District subpoenas. As explained to Plaintiffs' counsel, all of these documents are subject to the control of these Offices, including, if any, responsive email communications or other documents possessed by employees on personal email accounts (e.g., yahoo etc.) or computers. This is also true of any responsive documents of the Senate and House Redistricting Committees as the committee staff members are employees of either Office.

## Background

On May 31, 2011, the Illinois General Assembly passed Public Act 97-14, the Illinois Map at issue. Plaintiffs filed this Complaint nine weeks later, on July 27, 2011. On August 22, Plaintiffs served subpoenas *duces tecum* on the (i) Illinois House of Representatives (through Tim Mapes, House Clerk); (ii) Office of the Speaker of the Illinois House of Representatives (through Tim Mapes, Chief of Staff); (iii) Illinois House Redistricting Committee (through Barbara Flynn Currie, Chairperson); (iv) Office of the Senate President (through Andrew Manar, Chief of Staff); and (v) Senate Redistricting Committee (through Kwame Raoul, Chairperson). (Copies of these subpoenas are attached hereto as Exhibit A-1-A-5.)

These subpoenas, which had a one-week return date, cover tens of thousands of documents, virtually every single document that could remotely relate to the redistricting process dating back to January 1, 2010 and going forward into the future. The subpoenas' scope includes: (1) all Member and staff communications regarding the Map with anyone within or outside the legislature; (2) all analyses and reports regarding the Map or specific districts,

2

including any expert or consultant reports or opinions; (3) all draft maps, no matter who drafted them or however preliminary; (4) all data files and software used in formulating the Map; and (5) all documents identifying the Members and any other persons involved with fashioning or providing input on the Map. (*See* Exhibit A.)

The General Assembly's counsel spoke with Plaintiffs' counsel on August 24. The attorneys agreed on a revised return date of September 2 for the subpoenas.

In its September 2 joint response, the General Assembly asserted all of the objections asserted herein. (*See* Exhibit B). The attorneys for each side conferred on September 6, 13, and 14, and were unable to reach a compromise.

## Argument

I. **Legislative Immunity Bars The Instant Subpoenas And Prohibits Any Discovery Directed At The General Assembly For Its Actions Concerning Redistricting.**

Legislative immunity absolutely protects the legislative acts of state legislators and legislative aides not only from civil liability, but also from the burdens of document production, depositions, and trial testimony in civil proceedings. This broad privilege stems from the doctrine's fundamental purpose of prohibiting any interference with the integrity of the legislative process. Redistricting is a quintessential legislative function; indeed, the Map resulted from the legislative process culminating in the passage of Public Act 97-14. Because redistricting is part and parcel of the legislative process, legislative immunity precludes Plaintiffs' effort to obtain discovery concerning the legislative activities that resulted in the Map, either through documentary or oral discovery.

A.   **Legislative Immunity Applies To All Aspects Of The Legislative Process.**

"Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bagley v. Blagojevich*, 646 F.3d 378, 391 (7th Cir. 2011) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) and *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). It protects from inquiry any actions that are an "integral part of the deliberative and communicative processes by which Members participate ... with respect to the consideration and passage or rejection of proposed legislation . . . ." *Gravel v. United States*, 408 U.S. at 625.

Legislative immunity applies to core legislative acts such as drafting, introducing, debating and voting on legislation. *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997); *Baraka v. McGreevey*, 481 F.3d 187, 196 (3rd Cir. 2007). It covers conduct and communications in preparation for core legislative acts, such as conducting committee hearings, meetings and other official legislative events. *Gravel*, 408 U.S. at 625.

It protects memoranda and other documents used or drafted by legislators or legislative aides for legislative use. *Gravel*, 408 U.S. at 625; *Doe v. McMillan*, 412 U.S. 306, 312-13 (1973) (committee report prepared by staff for legislative use protected); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 417 (D.C. Cir. 1995) ("Once the documents were received by Congress for legislative use ... an absolute constitutional bar of privilege drops like a steel curtain to prevent [a litigant] from seeking discovery"); *Lindley v. Life Insurance Co.*, No. 08-CV-379-CVE-PJC, 2009 WL 2245565 at *10 (N.D. Okla. 2009); *Municipal Revenue Services, Inc. v. Xspand, Inc.*, No.4:CV-05-0671, 2007 WL 1314875 at **2-4 (M.D. Pa. 2007); *United Transp. Union v. Springfield Terminal Ry. Co.*, 132 F.R.D. 4, 5-6 (D. Me. 1990) (blocking subpoena to depose senator and obtain production of internal memoranda and drafts of documents prepared for legislative use). The privilege even covers information gathered from

4

constituents and confidential sources. *McSurely v. McClellan*, 553 F.2d 1277, 1286-87 (D.C. Cir. 1976) (*en banc*); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530-31 (9th Cir. 1983); *Government of Virgin Islands v. Lee*, 775 F.2d 514, 520-21 (3rd Cir. 1985).

### B. The Passing Of Redistricting Legislation Is Covered By Legislative Immunity.

The various steps necessary to research, investigate, prepare, draft, introduce, analyze, negotiate, and pass a congressional redistricting plan qualify as legitimate legislative activities. *Ryan v. State. Bd. of Elec.*, 661 F.2d 1130, 1132 (7th Cir. 1981) (explaining that it is the constitutional duty and primary responsibility of the General Assembly to draw Illinois' congressional districts after each decennial census and apportionment).

Indeed, the legislative immunity doctrine has been successfully invoked in a great many redistricting cases, including claims of intentional discrimination and violations of the Voting Rights Act. *See, e.g., Gonzalez v. City of Aurora*, No. 02 C 08346, Minute Order (N.D. Ill. 2003) (attached as Exhibit C) (barring deposition of non-party local legislators regarding their subjective motives or reasoning in enacting Aurora's redistricting plan); *Cano v. Davis*, 193 F.Supp.2d 1177, 1180-81 (C.D. Cal. 2002) (three-judge panel) (holding that legislative immunity, when invoked by state legislator, "protects both against disclosure and against use" of legislative acts in redistricting); *Martinez v. Bush*, No. 1:02-cv-20244 AJ, Mem. Op. at 3-6 (S.D. Fla. July 12, 2002) (three-judge panel) (Exhibit D) (barring depositions of state legislators and staff on their motivations and reasons for enacting redistricting plan); *Chen v. City of Houston*, No. H-97-1180, Mem. Op. at 3-4 (S.D. Tex. Oct. 31, 1997) (attached as Exhibit E) (barring deposition of city councilmember on actions involving redistricting); *Simpson v. City of Hampton*, 166 F.R.D. 16, 18-19 (E.D. Va. 1996) (legislative immunity encompasses testimonial

5

privilege that blocked production of legislator's files and notes in redistricting case); *Hispanic Coalition on Reapportionment v. Legislative Reapportionment Commission*, 536 F. Supp. 578, 582-583 n.2 (E.D. Pa. 1982) (barring deposition of chairman of the redistricting commission).

### C.     The Instant Subpoenas Are Aimed At Protected Legislative Actions.

Nor can there be any serious question that the information Plaintiffs seek via their subpoenas "are integral to the deliberative and communication processes" that legislators and staff alike use to fulfill the General Assembly's constitutional obligation to redraw congressional lines. The subpoenas at issue, all of which request identical information, contain 21 different categories of documents, including "*All* documents related to the state of Illinois legislative and/or congressional Redistricting process which led to the planning, development, negotiation, drawing, revision or re-drawing of the Proposed Congressional Plan." (*See, e.g.*, Exh. A-1, p. 8 (emphasis added).) They seek all "reports [and] analyses" concerning congressional redistricting, as well as documents of any kind concerning "communications, discussions, meetings, and/or conversations" on that topic, without limitation. *Id.*

There can be no question that Plaintiffs are seeking an open window into the deliberative process of the Illinois General Assembly in drawing its 2011 congressional boundaries. They seek any document, preliminary or otherwise, and any communication, in any form, at whatever stage in the process from the first inkling in the first legislator's mind until final discussions leading up to the passage of Public Act 97-14. The subpoenas seek information that falls squarely within the sphere of legitimate legislative activity and is covered by legislative immunity.

### D. Legislative Immunity Is An Absolute Privilege.

Legislative immunity, as a federal common-law privilege, exists for the same reason as the U.S. Constitution's Speech or Debate clause—to protect the integrity of the legislative process by insuring the independence of individual legislators without the fear of outside interference. *U.S. v. Brewster*, 408 U.S. 501, 507 (1972); *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 731 (1980). The Supreme Court and Seventh Circuit "equate" legislative immunity with the protections members of Congress enjoy in federal civil actions under the U.S. Constitution. *Bagley*, 646 F.3d at 397 (quoting *Consumers Union*, 446 U.S. at 731-32); *accord Bryant v. Jones*, 575 F.3d 1281, 1304 (11th Cir. 2009); *Larsen v. Senate of the Commonwealth of Pennsylvania*, 152 F.3d 240, 249 (3rd Cir. 1998); *National Ass'n of Social Workers v. Harwood*, 69 F.3d 622, 631 (1st Cir. 1995).

The rationale behind this principle of non-interference is that "[a]ny restriction on a legislator's freedom undermines the public good by interfering with the rights of the people to representation in the democratic process." *Banks*, 129 F.3d at 903 (quoting *Tenney*, 341 U.S. at 377). The doctrine of absolute legislative immunity "embodies the long-held belief that this country is better served by limiting recovery to injured parties rather than threatening the legislative process by placing legislators in fear of lawsuits from exercising their legislative duties." *Rateree v. Rocket*, 852 F.2d 946, 951 (7th Cir. 1988).

And this non-interference principle applies with equal force whether the legislative actor is a defendant or a third party. "A litigant does not have to name [legislators] or their staffs as parties to a suit in order to distract them from their legislative work. Discovery procedures can prove just as intrusive." *MINPECO, S.A. v. Conticommodity Services*, 844 F.2d 856, 859 (D.C.

7

Cir. 1988). *Accord Equal Employment Opportunity Comm'n v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011).

This principle of non-interference is absolute. As the Seventh Circuit recently reiterated, once it is determined that legislative immunity applies, it is an "absolute bar to interference" from the judiciary. *Bagley*, 646 F.3d at 396 (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-03 (1975)). *Accord Brown & Williamson*, 62 F.3d at 418-19 (regarding subpoena for documents to Congress, "'Once the legislative-act test is met, the privilege is absolute'") (quoting *Miller*, 709 F.2d at 529). Thus, the privilege, once applicable, carries with it no balancing of interests. *Eastland*, 421 U.S. at 509 (refusing to balance alleged First Amendment harms against need to protect legislative process from judicial interference because balancing test "ignores the absolute nature of the speech or debate protection and cases which have broadly construed that protection."); *Harwood*, 69 F.3d at 634 ("'balancing [of harms] plays no part'" in legislative immunity analysis) (quoting *Eastland*, 421 U.S. at 510 n.16).

### E. Absolute Legislative Immunity Applies To Both Legislators And Their Aides.

Courts long ago extended legislative immunity to the activities of legislative aides and consultants. *Gravel*, 408 U.S. at 615, 618; *Harwood*, 69 F.3d at 630-32 & n.10; *Ellis v. Coffee County Bd. of Registrars*, 981 F.2d 1185, 1192-93 (11th Cir. 1993) (collecting cases).

Indeed, in the recent *Bagley* decision, after the Seventh Circuit found that the governor's issuance of a line-item veto enjoyed legislative immunity from liability, it upheld not only the quashing of the governor's deposition but also the lower court's order prohibiting the questioning of the governor's aide, Julie Curry, about that topic (though she could be questioned on non-legislative matters). *Bagley*, 646 F.3d at 396-97. This conclusion naturally flows from what the Supreme Court instructed long ago. First, "it is literally impossible, in view of the

8

complexities of the modern legislative process . . . for [legislators] to perform tasks without the help of aides and assistants." *Gravel*, 408 U.S. at 616. Second, if equivalent protection were not accorded to legislative aides regarding legislative activities, then "the central role of the Speech or Debate Clause—to prevent intimidation by the Executive and accountability before a possibly hostile judiciary—will inevitably be diminished and frustrated." *Id.* at 617.

### F. The Non-Interference Principle Of Absolute Legislative Immunity Applies Equally To Document Production And Oral Testimony.

Absolute legislative immunity protects legislators and their aides "not only from the consequences of litigation's results but also from the burden of defending themselves" in a civil action. *Bagley*, 646 F.3d at 396 (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)). No less than being hauled into court as a party, being compelled to comb through tens of thousands of documents, to submit to depositions, and perhaps to testify at trial in civil actions "force legislators to divert their time, energy, and attention from their legislative tasks . . . ." *Id.* (quoting *Eastland*, 421 U.S. at 502-03).

It is for this reason that the Seventh Circuit in *Bagley* "[saw] no reason why the immunity protecting the Governor from liability for his veto (and Curry to the extent of her involvement in the veto) would not also protect them 'from the burden of defending themselves.'" *Id.* (quoting *Dombrowski*, 387 U.S. at 85) (parenthetical in original).

Likewise, the D.C. Circuit Court of Appeals firmly rejected plaintiff's claim that the scope of the Speech or Debate Clause's testimonial/nondisclosure privilege would be any narrower than the scope of immunity from suit:

> Looking only to the text of the Constitution, we would be inclined to conclude that, if anything, [plaintiff] has it backwards. The Clause says nothing specifically about lawsuits; what it does say is that members of Congress "shall not be *questioned* in any other place" about legislative actions. U.S. Const. art. I, § 6, cl. 1 (emphasis

9

> added). Based on the text of the Constitution, it would seem that the immunity from suit derives from the testimonial privilege, not the other way around.

*Brown & Williamson*, 62 F.3d at 418 (emphasis in original). *See Bagley*, 646 F.3d at 397 (noting that the Supreme Court "generally equates the legislative immunity to which state legislators are entitled ... to that accorded Congressmen under the Constitution."). Nor is there a meaningful distinction between an oral deposition and document production. *See Brown & Williamson*, 62 F.3d at 420 ("[d]ocumentary evidence can certainly be as revealing as oral communications").

Indeed, "one of the functions of absolute [legislative] immunity is protecting the claimant from discovery." *Schultz v. Stranczek*, 1991 WL 328518 at *1 (7th Cir. 1991). Thus, to fulfill the non-interference principle, federal courts have properly concluded that legislative immunity provides both testimonial immunity and a non-disclosure privilege pursuant to which legislators and their aides cannot be required to either produce documents or answer questions, whether in a deposition or on the witness stand, regarding legitimate legislative activities. *Gravel*, 408 U.S. at 616; *Equal Employment Opportunity Comm'n*, 631 F.3d at 181; *MINPECO*, 844 F.2d at 859; *Buonauro v. City of Berwyn*, No. 08-c-6687, 2011 WL 116870 at *10 (N.D. Ill. 2011) (legislative immunity precluded questions of non-party city council members concerning deliberations, thought processes, and motivations behind council's denial of business license); *Chen v. City of Houston*, 9 F.Supp.2d 745, 762 (S.D. Tex. 1998); *Municipal Revenue Services, Inc. v. Xspand, Inc.*, 2007 WL 1314875 at *3 (M.D. Pa. 2007) (agreeing with counsel that legislative immunity bars plaintiff from deposing or obtaining documents from a non-party state legislator about "[a]ll facts surrounding the introduction of [the legislation], discussions conducted by Representative Cappelli concerning [it], written documents concerning [it], debate concerning [it], etc.").

10

### G. Legislative Immunity Applies Regardless Of The Causes Of Action Asserted By Plaintiffs Or The Elements They Must Prove.

It is irrelevant that Plaintiffs here must prove that the General Assembly acted with discriminatory intent in drafting the congressional districts; legislative immunity attaches even "if the claim requires 'proof of a legislative act or the motives or purposes underlying such an act.'" *Empress Casino Joliet Corp. v. Blagojevich*, 638 F.3d 519, 529 (7th Cir. 2011) (quoting *Thillens, Inc. v. Comty. Currency Exch. of Illinois*, 729 F.2d 1128, 1131 (7th Cir. 1984) and *Gravel*, 408 U.S. at 621). Indeed, the doctrine "would have 'little value'" if it could be disregarded so easily by an allegation that the legislature acted unconstitutionally or illegally. *Id.* (quoting *Tenney*, 341 U.S. at 377). In the redistricting context, in particular, courts have rejected the notion that plaintiff's need to prove discriminatory intent should vitiate the privilege. *See Simpson*, 166 F.R.D. at 18-19; *Cano*, 193 F. Supp. 2d at 1180; *Chen*, Mem. Op. at 2 (Exhibit E).

This is particularly true because Plaintiffs have other avenues for seeking evidence regarding their claim that this map was the product of intentional discrimination, including public statements by legislators, records of public proceedings, publicly-available documents, testimony of third parties who are not Members or staff of the General Assembly, expert testimony, and in this case, incumbent members of Congress who may have played a role in drawing the congressional map (whose immunity, if any, is not presently before the Court). *See Chen*, Mem. Op. at 4 (Exhibit E). The Plaintiffs' subpoena to the Democratic Congressional Campaign Committee ("DCCC") highlights that Plaintiffs have additional means to obtain the documents that it seeks to obtain from the moving non-parties. (*See* Exhibit F, Plaintiffs' subpoena to the DCCC). The Plaintiffs are currently seeking to compel the DCCC, which the

Plaintiffs describe in their motion to compel as having drafted the map that the General Assembly subsequently passed, to produce documents concerning the preparation and passage of the congressional map. (*See* Exhibit F, Motion to Compel DCC). And while the DCCC has raised certain objections to the Plaintiffs' subpoena, the DCCC has not asserted legislative immunity as a basis for objecting to the Plaintiffs' subpoena.

Because there can be no dispute that the General Assembly's actions in drafting, discussing, analyzing, and passing Public Act 97-14 fall comfortably within the sphere of legitimate legislative actions, they are protected by legislative immunity. This privilege is unqualified and absolute. It applies with equal force to legislators and their aides and consultants. And it applies to the compelled production of documents, oral depositions, and trial testimony. For these reasons, the subpoenas at issue here should be quashed. In addition, this Court should enter a protective order (1) quashing all subpoenas for documents or discovery directed at the House, Senate, and its committees and staff and (2) limiting any subpoenas directed to Members of the General Assembly to those Members who affirmatively waive legislative immunity.

## II. Independent of Legislative Immunity, the Documents at Issue are Privileged from Disclosure under the Deliberative Process Privilege, the Attorney-Client Privilege and the Attorney Work-Product Doctrine

Although the legislative immunity privilege is absolute, if the court were to find the privilege inapplicable, the documents requested would still be privileged under the deliberative process privilege, the attorney-client privilege and the attorney work-product doctrine.

### A. The Deliberative-Process Privilege Applies to the Documents at Issue.

The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency. *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.

1993). The privilege protects advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The deliberative process privilege encompasses all deliberative communications regardless of what form they take. *Government Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531, 535 (S.D. Ind. 1990). This means the privilege will apply to both testimony and to documents. *Id.*

The documents that Plaintiffs seek clearly contain deliberative communications between legislative members and legislative aides that were part and parcel to the legislative process to enact the 2011 Congressional Redistricting Map. (*See, e.g.*, Exhibit A-1 at 8-9.) Specifically, Plaintiffs seek documents regarding communications, discussions, meetings, and conversations relating to the redistricting process. *Id.* Documents of this type undoubtedly fall under the deliberative process privilege. *See Farley*, 11 F.3d at 1389 (staff memoranda containing recommendations and interpretations fall under deliberative process privilege); *United States Securities and Exchange Commission*; 2010 WL 4977220 at *3 (N.D. Ill. 2010) (recommendations, proposals, suggestions, draft documents, and other materials that reflect the personal opinions of the writer fall under the privilege). Accordingly, if the Court determines that legislative immunity is inapplicable, then counsel requests adequate time to prepare and submit a privilege log detailing the documents subject to the deliberative process privilege. Fed. R. Civ. P. 26(b)(5) & 45(c)(3).

### B. The Attorney-Client And Work Product Privileges Bar The Disclosure Of Certain Documents.

In civil cases, the Illinois General Assembly (including its members and staff) enjoy the same attorney-client privilege as non-governmental entities. *United States v. Jicarilla Apache*

*Nation*, __ U.S. __, __, 131 S. Ct. 2313, 2320-21 (2011). This privilege promotes open discussions between attorneys and their government client by protecting communications made in confidence by a client and its employees to an attorney for the purpose of legal advice. *Sandra T.E. v. South Berwyn School District 100*, 600 F.3d 612, 618 (7th Cir. 2010) (documents generated by school district's law firm during an investigation were protected by attorney-client privilege). The privilege applies not only when litigation is ongoing or imminent, but also when the communication is outside the litigation context where an attorney advises a government client or employee on legal requirements or addresses legal concerns. *Id.* at 621.

Similarly, the attorney work-product doctrine protects documents prepared by an attorney in anticipation of litigation for the purpose of analyzing and preparing a client's case. *Id.* at 618; *U.S. v. Nobles*, 422 U.S. 225, 238-39 (1975). The Seventh Circuit has ruled that the doctrine is intended to "protect an attorney's thought processes and mental impressions against disclosure." *Sandra T.E.*, 600 F.3d at 622; *see Hickman v. Taylor*, 329 U.S. 495 (1947). The Seventh Circuit has held that "documents prepared because of 'some articulable claim, likely to lead to litigation'" receive work-product protection. *Sandra T.E.*, 600 F.3d at 622; *see Binks Mfg. Co. v Nat'l Presto Indus. Inc*, 709 F.2d 1109, 1120 (7th Cir. 1983).

Both the Illinois Senate President and House Speaker employ attorneys as legislative aides to advise them, members of their caucuses, and other legislative employees on the requirements of state and federal law, including the legislature's redistricting obligations. As part of their duties, the attorneys have provided (and continue to provide) legal advice to legislators and legislative aides alike via written and oral communications on specific redistricting topics, whether proactively or in response to specific client requests. In turn, these

attorneys routinely rely upon the assistance of other legislative aides to obtain or compile certain information or other materials in order for the attorneys to render legal advice.

Plaintiffs' subpoenas seek a broad range of documents that include within their scope privileged attorney-client communications between attorneys employed by the Senate President and House Speaker and legislators and/or legislative aides involved in congressional redistricting process. Similarly, many of the documents requested by the Plaintiffs fall under the attorney work-product doctrine because the documents were prepared in anticipation of and as an outgrowth of the claims litigated against redistricting plans for the past four decades. Accordingly, if the Court determines that legislative immunity is inapplicable, then counsel requests adequate time to prepare and submit a privilege log detailing the documents subject to the attorney client privilege and attorney-work product doctrine. Fed. R. Civ. P. 26(b)(5) & 45(c)(3).

## Conclusion

For the reasons stated above, the Court should enter an order quashing Plaintiffs' subpoenas and future subpoenas in a manner consistent with this Court's ruling on the privileges asserted.

Respectfully submitted,
By: /s/ Richard J. Prendergast, Esq.
One of the Attorneys for Non-party Movants

Non-Parties Senate President John J. Cullerton, House Speaker Michael J. Madigan, Senator Kwame Raoul, Representative Barbara Flynn Currie, and the subpoenaed General Assembly staff members.

Richard J. Prendergast
Michael T. Layden
Special Asst. Attorneys General
Richard J. Prendergast, Ltd.
111 W. Washington St., Suite 1100
Chicago, Illinois 60602
(312) 641-0881

Eric M. Madiar
Special Asst. Attorney General
605 State House
Springfield, IL 62706
(217) 782-2156

David W. Ellis
Special Asst. Attorney General
402 State House
Springfield, IL 62706
(217) 782-3392