**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| COMMITTEE FOR A FAIR AND BALANCED MAP, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11-C-5065 |
| v. | ) ) | Hon. John D. Tinder |
| ILLINOIS STATE BOARD OF ELECTIONS, *et al.*, | ) ) ) | Hon. Joan H. Lefkow Hon. Robert L. Miller, Jr. (3-judge court convened |
| Defendants. | ) | pursuant to 28 U.S.C. § 2284) |

**DEFENDANTS' MOTION TO DISMISS COUNTS V AND VI OF
PLAINTIFFS' AMENDED COMPLAINT**

Defendants, by their attorney Lisa Madigan, Attorney General for the State of Illinois, respectfully move to dismiss Counts V and VI of Plaintiffs' Amended Complaint. For the following reasons, these claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.      INTRODUCTION

Plaintiffs' original Complaint contained two counts alleging an unconstitutional partisan gerrymander in violation of the 14th Amendment (Count VI) and the First Amendment (Count V). This Court's November 1, 2011 Opinion and Order dismissed both. In its Opinion, this Court concluded "[t]he Committee's Fourteenth Amendment partisan gerrymandering claim must be dismissed because, with no workable standard yet in existence, the court can't say that its allegations give rise to a plausible claim upon which relief can be granted." DE#98; Court's November 1, 2011 Opinion and Order ("Memo. Op."), p. 19. Recognizing that the Supreme Court has rejected every proposed standard, this Court noted that, "[w]e surmise that amendment might be futile in light of today's understanding of the law under the Equal Protection Clause." *Id.* Nevertheless,

the Court provided the Committee an opportunity "to amend its complaint in an effort to articulate a workable and reliable standard for adjudicating their partisan gerrymandering claim and sufficient factual allegations to demonstrate plausibility." *Id*. at 20.

In addressing the First Amendment claim contained in Count V, on the other hand, this Court found that the "complaint falls to a different obstacle." *Id*. In dismissing Count V, this Court found that "[t]he Committee's complaint doesn't make plausible a finding that the 2011 Map infringes Republican voters' rights to associate with each other or with anyone else, or a finding that the 2011 Map burdens Republican voters' rights of free expression, or that the 2011 Map affects Republican voters' rights to petition the government." *Id*. at 21. The Court rejected Plaintiff's allegations that the Redistricting Plan "will make it more difficult for Republican voters to elect Republican candidates" because "that doesn't implicate a First Amendment right." *Id*. This Court's discussion of Count V did not include a similar invitation to amend.

Undeterred, Plaintiffs' Amended Complaint contains both a Fourteenth Amendment claim (Count VI) and a First Amendment claim (Count V). Both of these amended partisan gerrymandering claims should be dismissed because, like their first failed effort, Plaintiffs do not articulate any "workable and reliable standard" for judging an unconstitutional partisan gerrymander. Having failed to articulate a "workable and reliable standard," Defendants and the Court therefore are left with no way to assess whether Plaintiffs' allegations are "plausible."

Count VI, under the Fourteenth Amendment, should be dismissed because it simply restates proposed bases for partisan gerrymander claims that have already been expressly rejected by the Supreme Court. Count V, under the First Amendment, should

be dismissed for two reasons. First, while this Court's November 1, 2011 Order permitted an amendment to the Complaint regarding the 14th Amendment claims, it is less clear an amended First Amendment claim would be countenanced. *Id*. at 20-22. Second, Count V articulates verbatim the same standard as Count VI and, thus, should be dismissed for the same reasons.

## II.  ARGUMENT

### A.  The Partisan Gerrymander Claim under the Equal Protection Clause in Count VI Should Be Dismissed Because Plaintiffs' Proposed Standard has been Considered and Rejected by the Supreme Court.

Pursuant to this Court's November 1, 2011 Order, Plaintiffs amended their Complaint to include a proposed standard for measuring partisan gerrymandering claims. Going beyond the Court's Order, however, the Amended Complaint also changes the districts that Plaintiffs claim were politically gerrymandered. The initial Complaint alleged that Districts 3, 11, and 13 were politically gerrymandered, but the Amended Complaint drops the challenge to District 3 and adds a new challenge to District 17. Amend. Comp. ¶139. Needless to say, bringing a new challenge to a new district the week before trial, after the close of discovery, and after all of the experts have submitted their reports and have been deposed, is unfair and prejudicial.

Regardless of which districts are challenged, however, Plaintiffs' proposed standard is neither "workable" nor "reliable" and has been rejected by the Supreme Court. First, Plaintiffs' proposed standard purports to have "an intent requirement and an effect requirement." Amend. Comp., ¶ 140. This two-pronged (intent and effect) standard is essentially the same as the one proposed twenty-five years ago in *Davis v. Bandemer*, 478 U.S. 109, 133 (1986), measuring plaintiffs' "direct or indirect influence

on the elections of the state legislature as a whole." The proposed standard was expressly rejected by the Supreme Court in *Vieth v. Jubelirer*, 541 U.S. 267, 283-284 (2004) ("this standard was misguided when proposed, has not been improved in subsequent application, and is not even defended before us today by the appellants, we decline to affirm it as a constitutional requirement.").

Plaintiffs argue that the first element of their purported standard—intent—can be shown by "direct or circumstantial proof that the State's mapmakers created one or more congressional districts with the *predominant intent* to secure partisan advantage." Amend. Comp., ¶ 141 (emphasis added). However, in *Vieth*, the Supreme Court flatly rejected a proposed "predominant intent" standard that was worded essentially the same way as the one proposed here. *Vieth*, 541 U.S. at 284 (proposed "intent standard" would require plaintiff to "'show that the mapmakers acted with a *predominant intent* to achieve partisan advantage,' which can be shown 'by direct evidence or by circumstantial evidence that other neutral and legitimate redistricting criteria were subordinated to the goal of achieving partisan advantage.'"). The Court rejected this proposed standard because:

> Vague as the "predominant motivation" test might be when used to evaluate single districts, it all but evaporates when applied statewide. Does it mean, for instance, that partisan intent must outweigh all other goals—contiguity, compactness, preservation of neighborhoods, etc.— *statewide?* And how is the statewide "outweighing" to be determined?

*Id.* at 285 (emphasis in original). Moreover, not only has the Supreme Court expressly rejected Plaintiffs' proposed "predominant intent" standard, it has even gone so far as to reject a proposed "sole motivation" standard. *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 418-420 (2006) ("LULAC") ("a successful claim attempting to

4

identify unconstitutional acts of partisan gerrymandering must do what appellants' sole-motivation theory explicitly disavows: show a burden, as measured by a reliable standard, on the complainants' representational rights.").  In *LULAC*, the Court rejected the sole motivation standard:  "The [Texas state] legislature does seem to have decided to redistrict with the sole purpose of achieving a Republican congressional majority, but partisan aims did not guide every line it drew." *Id.* at 417.

The *Vieth* Court not only rejected the "predominant intent" standard for measuring a statewide redistricting plan, but also as applied to individual districts. *Vieth*, 541 U.S. at 285 (because "political entities" are responsible for redistricting, "unsurprisingly that turns out to be root-and-branch a matter of politics").  The Supreme Court rejected a comparison to racial gerrymandering because, unlike racial gerrymandering claims, "the fact that partisan districting is a lawful and common practice means that there is almost *always* room for an election-impeding lawsuit contending that partisan advantage was the predominant motivation." *Id.* at 286.  This is exactly the situation presented here:  Plaintiffs seek, through this litigation, to impede the upcoming election due to the "lawful and common practice" of political line drawing.

Plaintiffs' "effects" element, the second prong of their proposed standard, fares no better than their proposed intent element.  Plaintiffs argue that a redistricting plan has an unconstitutional effect where it is the case:

> (1) that the Proposed Congressional Plan increases the number of districts that favor Democrats by at least 10% according to an accepted measure of partisan voting; (2) that the Proposed Congressional Plan keeps at least 10% more constituents of Democratic incumbents in the same district as their representative than it does constituents of Republican incumbents; and (3) that at least one of the districts created with the intent to advantage Democrats is among the districts that contributes to the proof of

elements 1 and 2.

Amend. Comp., ¶ 142.  These proposed measures of purported unconstitutional effect are obviously unworkable.

As to the proposed first element:  What does it mean to "favor" Democrats?  By how much does the district have to "favor" Democrats?  Does a district that shifts from 49.99 % Democratic to 50.01% count?  What if it switches back after the next election? How many election results need to be reviewed to constitute sufficient evidence of partisanship?   In addition, it is unclear whether and how this element can take into account independent or new voters in a district.

Moreover, as to their proposed first element, Plaintiffs argue the partisanship "favor" must be by an "accepted" measure.  By whom, Plaintiffs do not say.  What if there is more than one measure, and they conflict?  Although they have not offered an expert witness on their partisanship claims, Plaintiffs make reference to the Cook Partisan Voting Index, which measures partisanship in presidential elections. Amend. Comp., ¶ 75, fn. 10.   Needless to say, this measure changes from election to election, and it includes only presidential elections, omitting Congressional midterm elections and any other electoral contests.  Recent history demonstrates that the Partisan Indices from the 2008 Presidential Election had little predictive value relative to the November 2010 Congressional elections.  As the Supreme Court noted, the difficulty with these so-called indices is:

> a person's politics is rarely as readily discernible—and *never* as permanently discernible—as a person's race. Political affiliation is not an immutable characteristic, but may shift from one election to the next; and even within a given election, not all voters follow the party line. We dare say (and hope) that the political party which puts forward an utterly incompetent candidate will lose even in its

> registration stronghold. These facts make it impossible to assess the effects of partisan gerrymandering, to fashion a standard for evaluating a violation, and finally to craft a remedy.

*Vieth*, 541 U.S. at 287 (emphasis in original). It is impossible for any party to gauge with certainty whether individual voters' partisan preferences will change with any future election, which makes such indices improper indicators of voter choice.

Next, Plaintiffs argue the number of Democratic "favored" districts must increase by 10% in order to show an unconstitutional partisan effect. That begs the question: 10% of what? Does that refer to total districts or only Democratic Districts? Because Illinois has eight Democratic Representatives, an increase of one Democratic "favored" district would be unconstitutional (going from 8 to 9 is a 12.5% increase) under the Plaintiffs' proposed standard. Imagine a state with ten districts (five favor Democrats, and five favor Republicans) that, like Illinois has for two consecutive decades, loses a district to reapportionment. What then? That state arguably cannot mathematically draw a constitutional plan because the loss of one side or the other will increase partisan advantage by 20%.

Further, Plaintiffs argue that an unconstitutional effect is apparently shown when the Plan "keeps" 10% more Democrats in the "same district as their representative" than "it does constituents of Republican incumbents." Amend. Comp., ¶ 142. The more one reads this allegation, the less sense it makes. Would it mean that a given map keeps 10% more Democrats with their incumbent legislator than it keeps Republicans with their incumbent legislator? Does that count everyone or only Democrats in Democratic districts and Republicans in Republican districts? Does it apply statewide? If so, how? Is it just raw numbers or averages? Does one count total population, VAP or CVAP,

registered voters or turnout? If partisanship is, as the Supreme Court says, *never* permanently discernible for determining how people will vote, it is just as impossible to discern for purposes of determining things like district/constituent retention.

Plaintiffs' proposed standard, because it depends on projecting a voter's past partisan voting behavior into the future, is just as unmanageable as the standards rejected in *Vieth*. *Vieth*, 541 U.S. at 288 (rejecting Plaintiffs' proposed intent and effect standard as "not judicially manageable" because "[t]o begin with, how is a party's majority status to be established?"). Similarly, the *Vieth* Court rejected Plaintiffs' proposed standard because it attempted to use statewide partisanship indexes for legislative districts. *Id*. ("Moreover, to think that majority status in statewide races establishes majority status for district contests, one would have to believe that the only factor determining voting behavior at all levels is political affiliation. That is assuredly not true.").

Plaintiffs' proposed standard is even further removed from legislative elections than the one rejected in *Vieth*. These Plaintiffs apparently want to use a partisanship standard derived only from presidential elections, which is an even less reliable indicator of partisanship for district-level elections than statewide elections. Moreover, they would have this Court use a "national average" measure of partisanship. Amend. Comp., fn. 10. In other words, the partisanship of Illinois's Congressional Districts is measured against a baseline that includes results from every other state. What election returns in Montana, North Dakota, or Mississippi have to say about Illinois's districts, Plaintiffs do not say. Additionally, the Cook Partisan Voting Index is not a reliable indicator of Congressional election results in Illinois. Prior to the 2010 midterms, the PVI favored Democrats in 10 districts and ranked one district as evenly divided. Yet Democrats won only 8 seats in

the actual election. (Cook Political Report, *Partisan Voting Index Districts of the 111th Congress*, pp. 2A.4-2A.5, http://cookpolitical.com/sites/default/files/pvistate.pdf).

Plaintiffs will no doubt respond that their proposal, unlike some others, is "eminently scientific" with its different "elements" and "factors." *See, e.g., Vieth*, 541 U.S. at 296. However, as noted above, Plaintiffs' proposed standard, just like every other proposal, is designed to measure "when political gerrymandering has gone too far." *Id.* The Supreme Court has rejected these multiple factor proposals because "[i]t does not solve that problem to break down the original unanswerable question (How much political motivation and effect is too much?) into four more discrete but equally unanswerable questions." *Id.* at 296-97.

Furthermore, in *Vieth*, the Supreme Court not only rejected the standards mentioned above, but also a proposed "totality of the circumstances" test. *Id.* at 291. The plurality also rejected Justice Stevens' proposed use of racial gerrymandering analysis (*Id.* at 293-294), Justice Souter's proposed Title VII based standard (*Id.* at 295), and Justice Breyer's proposed "unjustified entrenchment" standard. *Id.* at 299. Simply put, "no judicially discernible and manageable standards for adjudicating political gerrymandering claims have emerged." *Id.* at 285.

The problems with Plaintiffs' proposed standard are too many to mention in great detail, but they are similar to the very problems that caused the Supreme Court to reject every proposed standard that has been presented. This proposed standard fares no better, and should, like all the others, be rejected. Count VI should be dismissed.

**B.**    **Count V Should Be Dismissed Because Partisan Gerrymandering Claims Do Not Implicate the First Amendment.**

Count V should be dismissed for three reasons. First, as noted above, this Court's

November 1, 2011 Order dismissed the First Amendment partisan gerrymandering claim but did not clearly invite an amendment to that count the same way the Court did with the Equal Protection claim. Mem. Op., p. 20-22. Second, Plaintiffs' proposed standard for measuring partisan gerrymandering claims is, verbatim, the same as the one they proposed for their Equal Protection claim and, therefore, is both unworkable and unreliable for the same reasons discussed above. *See* Section II.A, *supra*. Finally, the Supreme Court and courts in this District, including this Court, have consistently ruled that partisan gerrymandering claims cannot plausibly implicate the First Amendment.

The fact that Plaintiffs' proposed standard for measuring a First Amendment violation is exactly the same as their proposed Equal Protection standard is telling. In *Vieth*, the Supreme Court expressly rejected the notion that a First Amendment analysis is the same as an Equal Protection one. *Id.* at 294. Moreover, the Supreme Court also rejected the notion that partisan gerrymandering claims violate the First Amendment because "a First Amendment claim, if it were sustained, would render unlawful *all* consideration of political affiliation in districting, just as it renders unlawful *all* consideration of political affiliation in hiring for non-policy-level government jobs." *Vieth*, 541 U.S. at 294.

Recognizing this Supreme Court jurisprudence, courts in this judicial District have thrice dismissed First Amendment partisan gerrymandering claims in the last month alone. First, there is this Court's initial ruling dismissing Count V in this matter: "The Committee's complaint contains a considerable number of allegations to the effect that the 2011 Map will make it more difficult for Republican voters to elect Republican candidates, but that doesn't implicate a First Amendment right." Memo. Op. at 21. In

addition, within the last two weeks, the three judge panel in this District that is hearing challenges to the State's legislative redistricting plan has also dismissed, with prejudice, two separate First Amendment partisan gerrymander claims.  *See Radogno v. Illinois State Bd. of Elections*, 2011 WL 5025251, *8 (N.D. Ill. Oct. 21, 2011) (dismissing First Amendment partisan gerrymandering claim, reasoning that the "effects of political gerrymandering on the ability of a political party and its voters to elect a member of the party to a seat . . . implicates no recognized First Amendment right"); *League of Women Voters v. Quinn*, 2011 WL 5143044, *2 (N.D. Ill. Oct. 28, 2011) (rejecting plaintiffs' First Amendment partisan gerrymander claim because "it brushes aside a critical first step to bringing a content-based First Amendment challenge:  the challenged law must actually restrict some form of protected expression.").

In *League of Women Voters*, Plaintiffs brought a single count complaint asserting partisan gerrymandering under the First Amendment.  *Id*. at *1.  In short, Plaintiffs asserted that the use of political data in the redistricting process abridged the First Amendment.  *Id*.  In dismissing the Complaint with prejudice, the Court considered:

> Under the redistricting plan, are LWV's members being in any way prohibited from running for office, expressing their political views, endorsing and campaigning for their favorite candidates, voting for their preferred candidate, or otherwise influencing the political process through their expression? The answer is no.

*Id*. at *3.  The same questions can be put to the Plaintiffs here.  The redistricting plan does not prohibit them from running for office, expressing their political views, endorsing and campaigning for candidates, voting for preferred candidates, or influencing the political process through their free expression.  Thus, the Supreme Court was correct when it concluded in *Vieth* that partisan gerrymanders do not raise First Amendment

11

concerns, as was this District in *Radogno* and *League of Women Voters*.. Count V should now be dismissed with prejudice.

WHEREFORE, Defendants respectfully request that this Court dismiss Count V and Count VI of Plaintiffs' Amended Complaint with prejudice.

Date: November 11, 2011

Respectfully submitted,

LISA MADIGAN,
Attorney General for the State of Illinois

_____/s/ Brent D. Stratton_____
Attorney for Defendants

Brent D. Stratton
Carl Bergetz
Jon Rosenblatt
Office of the Illinois Attorney General
100 West Randolph, 12th Floor
Chicago, Illinois 60601
312-814-3000