**Page 1**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COMMITTEE FOR A FAIR AND )
BALANCED MAP, et al., )
    Plaintiffs, ) Case No.
  vs. ) 1:11-cv-05065
ILLINOIS STATE BOARD OF )
ELECTIONS, et al., )
    Defendants )

The deposition of RICHARD L. ENGSTROM,
Ph.D., called for examination pursuant to the
Rules of Civil Procedure for the United States
District Courts pertaining to the taking of
depositions at 222 North LaSalle Street,
Suite 300, Illinois, on the 25th day of October,
2011, at the hour of 9:20 a.m.

Reported by: BRENDA K. DUFEK, CSR
License No.: 084-003969

**Page 2**

APPEARANCES:
1  MAYER BROWN, LLP
2  BY: MS. LORI E. LIGHTFOOT
    MR. THOMAS V. PANOFF
3    MR. MICHAEL D. FRISCH
  71 South Wacker Drive,
4  Chicago, Illinois 60606-4637
  (312) 701-8821
5
  On behalf of the Plaintiffs;
6
7  HINSHAW & CULBERTSON, LLP
  BY: MR. MICHAEL J. KASPER
8  222 North LaSalle Street, Suite 300
  Chicago, Illinois 60601
9  (312) 704-3000
  mjkasper60@mac.com
10
  and
11
  ASSISTANT ATTORNEY GENERAL LAW BUREAU
12  BY: MS. JENNIFER ZLOTOW
  100 West Randolph Street, 13th Floor
13  Chicago, Illinois 60601
  (312) 814-5354
14  jzlotow@atg.state.il.us
15  On behalf of the Defendants.
16  ALSO PRESENT:
17  Allan J. Lichtman, Ph.D.

**Page 3**

I N D E X
WITNESS           EXAMINATION
RICHARD L. ENGSTROM, Ph.D.
By Mr. Kasper        4
By Ms. Zlotow      195

E X H I B I T S
NUMBER        MARKED FOR ID
Deposition Exhibit
Nos. 1-4        5
No. 5        20
No. 6        54
No. 7        98
No. 8        117
No. 9        134
No. 10      135
No. 11      161
No. 12      165
No. 13      174
No. 14      180
No. 15      206
No. 16      212

**Page 4**

    (Witness sworn.)

    RICHARD L. ENGSTROM, Ph.D.,

called as a witness herein, having been first

duly sworn, was examined and testified as follows:

    EXAMINATION

BY MR. KASPER:

    Q. Dr. Engstrom, thank you for coming. My

name is Mike Kasper. I'm going to ask you a

couple of questions throughout the day.

    A. Just a couple?

    Q. Just a couple.

    It depends on what the answers are.

    A. Okay.

    Q. If you -- and we're going to cover

three areas generally; the reports that you

prepared, the analysis that you did, and some of

the past work that you've done. That's roughly

what it's going cover. Okay.

    If I ask you a question that you don't

understand, please just correct me or stop me.

If you want to take a break, just take a break.

I presume you've been through this many times

before?

    A. Yes.

1    Q.  So you know the drill.  If there's
2  anything that is unclear, please let me know.
3    A.  Yes.
4    MR. KASPER:  At the beginning, I'm going to
5  pass around a copy of the reports.  Why don't we
6  mark as Exhibit Number 1 the report that you
7  prepared in connection with this litigation.
8  Exhibit Number 2 is Dr. Lichtman's report.
9  Number 3 is Dr. Lichtman's report in response to
10  your report.  4 is your rebuttal report.
11    (Whereupon, Deposition Exhibit
12    Nos. 1-4 were marked for
13    identification.)
14  BY MR. KASPER:
15    Q.  Dr. Engstrom, are you familiar with
16  each of these documents generally?
17    A.  Yes.
18    Q.  And you prepared two of them, and you
19  read both of Dr. Lichtman's reports?
20    A.  Correct.
21    Q.  In doing the analysis that you did in
22  this case, Dr. Engstrom, did you form an opinion
23  about whether or not voting is racially
24  polarized in CD 5 of the state-adopted plan?

5

1    MS. LIGHTFOOT:  Can you -- Mike, if you're
2  going to read from specific paragraphs, it would
3  help us if you tell us where you're referring
4  to.
5    MR. KASPER:  Sure.
6  BY MR. KASPER:
7    Q.  Page 9, in the second full paragraph,
8  the third sentence.  Do you see that, Doctor,
9  with the sentence that begins, It no doubt
10  remains?
11    MS. LIGHTFOOT:  Just for the point of
12  clarification, the word packed I don't believe
13  appears in that sentence.
14  BY MR. KASPER:
15    Q.  Do you see the sentence?
16    A.  The sentence --
17    Q.  It no doubt remains?
18    A.  Yeah.
19    Q.  All right.  And then you go on to say,
20  quote, Maintaining a percentage of Latino voters
21  within it that is higher than necessary to
22  provide Latinos with a viable opportunity to
23  elect representatives of their choice, close
24  quote.  Do you see that?

7

1    A.  Within CD 5?
2    Q.  Yeah.
3    A.  No, there wasn't.  I didn't do CD 5
4  specifically.
5    Q.  Did you form an opinion about whether
6  or not voting is racially polarized in any
7  state-adopted district outside of CD 4?
8    A.  No, that was for the area of interest
9  from which districts were drawn.
10    Q.  Okay.  And did you do an analysis of
11  racially polarized voting in any district in the
12  state-adopted plan outside of CD 4?
13    A.  No.
14    Q.  Now, if I understand the report
15  correctly, in your first report on page 9, you
16  indicate that -- page 9.  I'm sorry.
17    MS. LIGHTFOOT:  This is, for the record,
18  Engstrom 1.
19    MR. KASPER:  Yes, in Engstrom 1.
20  BY MR. KASPER:
21    Q.  You indicate that your analysis has
22  determined that CD 4 is, quote, packed,
23  close-quote, and you described that as meaning
24  CD 4 contains, quote, I'm sorry --

6

1    A.  Yes, I do.
2    Q.  And the next -- in the next sentence --
3  I apologize.  I mischaracterized it -- you used
4  the word packed.  Is that a definition of packed
5  in the --
6    A.  Is that a definition of packed?
7    Q.  Yes.  Is that how you're describing
8  packed?
9    MS. LIGHTFOOT:  Objection.
10  BY MR. KASPER:
11    Q.  In other words --
12    MS. LIGHTFOOT:  Object to the form.
13  BY MR. KASPER:
14    Q.  I'm sorry.  Doctor, you have to answer
15  audibly.
16    A.  Okay.
17    MS. LIGHTFOOT:  Let me just be clear, unless
18  I instruct you not to answer, if I interpose an
19  objection, you should answer.
20    THE WITNESS:  All right.
21    MS. LIGHTFOOT:  Do you want to -- do you
22  understand the question?
23    THE WITNESS:  Yes.
24    Yes, I think that functions as a

8

2 (Pages 5 to 8)

1  polarized probing analysis, and that's the --
2  the focus of the dilution inquiry because that
3  is the area from which Latino districts can be
4  drawn, at least two majority and a -- one
5  majority and a plurality can be drawn to replace
6  one majority.
7      Q.  Okay.  And is that the exclusive
8  geographic area in which you did your racial
9  polarization analysis?
10     A.  In terms of racial polarization
11 analysis, yes.
12     Q.  And is that -- did you do one analysis
13 incorporating that entire area?
14     A.  Well, I don't know what you mean by
15 "one analysis."
16     Q.  My question, did you separate a racial
17 polarization analysis in state-adopted CD 4?
18     A.  No.
19     Q.  Did you separate a racial polarization
20 analysis in Fair Plan districts 3 and 4?
21     A.  No.
22     Q.  So did you do a racial polarization
23 analysis in any district in either plan?
24     A.  No.  We've already established that.
                                                17

1  BY MR. KASPER:
2      Q.  Is the area of interest in your
3  analysis contiguous?
4      A.  Yes.
5      Q.  Okay.  Is it every single precinct in
6  the three subsets that we talked about or did
7  you exclude non-Latino precincts?
8      A.  No.  It's in every precinct in that
9  area, if it's a county-wide election.  All
10 right.  Some of the polarized voting analysis
11 refers to county elections within that area of
12 interest.
13     Q.  Right.  I see.
14     A.  Those would cover all precincts.  Some
15 were from districted elections that would only
16 cover portions of the whole entire area.
17     Q.  For example, if I understand that
18 correctly, you analyzed some judicial subcircuit
19 elections?
20     A.  Correct.
21     Q.  You would include only those precincts
22 within that subcircuit that are included within
23 the three geographic areas that we just talked
24 about?
                                                19

1      Q.  And so the area of interest is a
2  geographic area that is not reflected in either
3  plan?
4      MS. LIGHTFOOT:  Object to the form,
5  mischaracterizes --
6  BY MR. KASPER:
7      Q.  Is that right?
8      MS. LIGHTFOOT:  -- the witnesses testimony.
9      THE WITNESS:  I'm not -- not -- would you
10 repeat.
11 BY MR. KASPER:
12     Q.  The area of interest -- what I'm trying
13 to do is picture in my head the area of interest
14 on a map, and if I did that, it would not be
15 reflected in either plan; is that right?  It's
16 bigger than any district in either plan?
17     A.  Well, the area would be in the map on
18 any plan.
19     Q.  But it's not incorporated in any
20 particular district?
21     MS. LIGHTFOOT:  Object to the form,
22 mischaracterizes the testimony.
23     THE WITNESS:  The entire area does not
24 represent one district in any plan.
                                                18

1      A.  Within the area of interest?
2      Q.  Yes.
3      A.  That would be correct.
4      Q.  And any precincts outside the area of
5  interest were excluded from your analysis?
6      A.  Correct.
7      Q.  Did you do an analysis of racial
8  polarization in state-adopted district CD 3?
9      A.  No.
10     Q.  Or state-adopted district CD 8?
11     A.  No.
12     Q.  Or state-adopted district CD 11?
13     A.  No.
14     MR. KASPER:  Okay.  I'd like to direct your
15 attention -- this will be Exhibit Number 5.
16          (Whereupon, Deposition Exhibit
17           No. 5 was marked for
18           identification.)
19 BY MR. KASPER:
20     Q.  This is a map.  This is taken from
21 page 34 of Dr. Lichtman's rebuttal report to
22 you.
23     A.  Page 34?  I should ignore the page?
24     Q.  The description of the text describing
                                                20

1    your area of interest, I presume you've seen the
2    state-adopted plan; is that right?
3        A.  For the area.  I mean, I've seen a map
4    of the whole thing, but my focus was on the area
5    of interest.
6        Q.  And the same thing for the proposed
7    alternative Fair Plan?
8        A.  Correct.
9        Q.  Okay.  Have you seen any other plans?
10       A.  No.
11       MS. LIGHTFOOT:  Object to the form.
12   BY MR. KASPER:
13       Q.  In the state-adopted plan, CD 4 has a
14   Latino VAP in excess of 50 percent; is that
15   right?
16       A.  In the adopted plan CD 4, yes, it does.
17       Q.  And, likewise, in adopted -- I'm sorry.
18       Likewise in Fair CD 4, there is a
19   Latino VAP in excess of 50 percent, correct?
20       A.  Correct.
21       Q.  And there are no districts in any other
22   plan -- in either plan that has a Latino VAP in
23   excess of 50 percent; is that correct?
24       A.  Correct.
                                                    53

1        MR. KASPER:  Okay.  I'm going to move on
2    to -- can we take a five-minute restroom break,
3    is that okay with you?
4        THE WITNESS:  Okay.
5            (Whereupon, a short break was
6            taken.)
7        MR. KASPER:  Dr. Engstrom, I'm going to show
8    you what is marked as Exhibit Number 6.
9            (Whereupon, Deposition Exhibit
10           No. 6 was marked for
11           identification.)
12   BY MR. KASPER:
13       Q.  This is a copy of a research brief that
14   you published in May of this year entitled
15   Redistricting, colon, Influenced Districts,
16   Dash, a Note of Caution and a Better Measure.
17   Do you recall writing this?
18       A.  Yeah, redistricting may be part of a
19   section, but anyway I wrote this paper.
20       Q.  All right.
21       A.  I'm not sure it's part of the title.
22       Q.  In that article, you define four
23   different kinds of legislative districts; is
24   that correct?
                                                    54

1        A.  I don't recall the number.
2        Q.  Okay.  In the first, on pages 1 and 2
3    of -- the last sentence on page 1 that carries
4    over to page 2, that is, districts in which by
5    virtue of being in the majority, the group at
6    issue has an opportunity to elect a
7    representative of their choice.
8        A.  Do you want me to read?
9        Q.  Why don't you read that paragraph, the
10   last paragraph of page 1 on to page 2.
11       A.  The whole --
12       Q.  Just the first --
13       MS. LIGHTFOOT:  It's short.
14       THE WITNESS:  Beginning the application?
15   BY MR. KASPER:
16       Q.  Yes, please.  Yes, please.
17       MS. LIGHTFOOT:  Read it to yourself.
18       THE WITNESS:  Read it to myself?
19   BY MR. KASPER:
20       Q.  Yes, please.
21       A.  Okay.
22       Q.  Okay.  That paragraph describes what I
23   believe in your vernacular would constitutes a
24   majority/minority district; is that correct?
                                                    55

1        MS. LIGHTFOOT:  Object to the form.  It
2    speaks for itself.
3        THE WITNESS:  I don't know about my
4    vernacular here.
5    BY MR. KASPER:
6        Q.  No, just in the trade so to say.
7        MS. LIGHTFOOT:  Same objections.
8        THE WITNESS:  Say it again.
9    BY MR. KASPER:
10       Q.  Does this paragraph describe a
11   majority/minority district?
12       A.  Well, a protected minority constitutes
13   a majority of the voting age population.
14       Q.  And because it constitutes a majority
15   of the voting age population, it, therefore, has
16   an opportunity to elect a representative of
17   their choice including one from their own group?
18       A.  Well, that's the focus of the way the
19   protections have been applied.
20       Q.  Okay.  And you understand a majority to
21   be majority of the voting age population?
22       A.  That's what it says.
23       Q.  Okay.  On page 14 of your initial
24   report, the conclusion section in the first
                                                    56

14  (Pages 53 to 56)

1     MR. PANOFF: Object to form, foundation, and
2 asked and answered.
3     THE WITNESS: I don't recall if I've seen it.
4 BY MR. KASPER:
5     Q. Okay.
6     A. I don't know.
7     Q. This is a printout of every precinct in
8 Cook County?
9     A. Okay.
10     Q. Did this play any role in your analysis
11 in preparing either of your reports?
12     MR. PANOFF: Object to form, foundation,
13 asked and answered.
14     THE WITNESS: Every precinct in Cook County?
15 BY MR. KASPER:
16     Q. Yes.
17     A. It's possible that this -- what this --
18 what this document is is that it's a data file.
19 It's possible I received one with every county,
20 every precinct in the county, but that wouldn't
21 be -- I mean, I would have reduced it to
22 precincts in the area at interest in terms of my
23 analysis.
24     Q. All right. And if you used this

173

1 document, would you have any way indicated which
2 precincts are within your area of interest?
3     MR. PANOFF: Object to the form and
4 foundation and to the extent that it calls for
5 any speculation.
6     THE WITNESS: I had the document reduced to
7 the precincts in the area of interest.
8 BY MR. KASPER:
9     Q. Okay. Then do you know why this --
10     A. The data file was reduced to the
11 precincts in the area of interest.
12     Q. Then do you know why this document was
13 given to us as a product of your work?
14     MR. PANOFF: Object to form, foundation, and
15 to the extent that it calls for speculation.
16     THE WITNESS: I don't know why any particular
17 document was sent to you in discovery. It may
18 have been -- I might have had one of these to
19 begin with. I don't know.
20     MR. KASPER: All right. And I'm going to
21 mark what is 13.
22     (Whereupon, Deposition Exhibit
23     No. 13 was marked for
24     identification.)

174

1 BY MR. KASPER:
2     Q. Would you take a second to look at that
3 document.
4     A. Okay.
5     Q. Have you ever seen this document
6 before?
7     A. I do not know.
8     Q. Okay. You see on the top of the upper
9 right-hand column, see the name Ramon,
10 R-a-m-o-n, Ocasio, III, O-c-a-s-i-o? Do you see
11 that?
12     A. Yes.
13     Q. Do you recognize the name Ocasio as one
14 of the elections you studied?
15     A. He was a candidate -- or she. I'm
16 sorry. But this person was.
17     Q. He.
18     A. There was an Ocasio in one of the
19 elections I studied, yes.
20     Q. And is this, in fact, the precincts
21 from the election that Ocasio was involved in?
22     MR. PANOFF: Object to form and foundation.
23     THE WITNESS: I do not know.
24

175

1 BY MR. KASPER:
2     Q. Okay.
3     A. Just from looking at this, I can't
4 tell.
5     Q. Is there any way to determine which of
6 these precincts are located in your area of
7 interest?
8     A. It's not determined on this document.
9     Q. Okay.
10     A. But I mean, would there be a way to
11 if -- yes, I think there would be a way to
12 determine that.
13     Q. Okay. Did you determine that? You
14 must have to include only those precincts in
15 your analysis?
16     A. I said only those precincts in my
17 analysis. I did not determine which precincts
18 fell within that area.
19     Q. Do you recall what you did with the
20 split precincts regarding this election?
21     MR. PANOFF: Object to form, asked and
22 answered.
23     THE WITNESS: I don't recall exactly. I
24 remember being told that they've been

176

44 (Pages 173 to 176)

1     accommodated, but exactly how, I don't recall.
2     BY MR. KASPER:
3        Q. Can you -- do you know -- you say you
4     were told. By whom, do you recall?
5        A. I believe Edward Marshall.
6        Q. Edward Marshall, okay.
7        And is that who you received all this
8     data from?
9        A. He's --
10     MR. PANOFF: Object to the form.
11     THE WITNESS: Either directly or indirectly.
12     BY MR. KASPER:
13        Q. What does that mean?
14        A. Well, some of the times I think
15     Mr. Marshall sent me things directly, sometimes
16     it may have gone through the law office.
17     MR. PANOFF: And, Dr. Engstrom, I would just
18     caution you, to the extent that you would
19     divulge any attorney/client communications,
20     instruct you not to answer. But if you just
21     want to say whether an attorney produced
22     something or not, you can answer that.
23     THE WITNESS: Well, whatever the document --
24     I believe Ed Marshall was the source.

177

1     BY MR. KASPER:
2        Q. I see. Okay.
3        So your area of interest, do you know
4     what exactly was included in your area of
5     interest?
6     MR. PANOFF: Object to the form.
7     THE WITNESS: Yes, I've defined it.
8     BY MR. KASPER:
9        Q. Okay. If a precinct is half inside
10     Fair CD 3, is it included or excluded from the
11     area of interest?
12     MR. PANOFF: Object to form and to the extent
13     it calls for speculation.
14     THE WITNESS: I don't recall.
15     BY MR. KASPER:
16        Q. So then how do you know the entirety of
17     what's included in the area of interest?
18     MR. PANOFF: Object to the form.
19     THE WITNESS: By what is in CD 4 in the
20     adopted plan, in CD 3 and CD 4 in the Fair Plan.
21     BY MR. KASPER:
22        Q. So any precinct that is entirely in
23     that area is included, that much we've
24     established. We don't need to recover.

178

1        What about a precinct that is split?
2     Is it included up to the split, is it entirely
3     excluded, or is it entirely included?
4     MR. PANOFF: Are you talking about CD 4?
5     BY MR. KASPER:
6        Q. In the area of interest.
7        A. I don't -- I don't recall.
8        Q. Did you ever know and you don't recall
9     or did you -- were you ever aware?
10     MR. PANOFF: Object to the form.
11     THE WITNESS: I was informed that precinct
12     splits had been accommodated. That's my memory.
13     BY MR. KASPER:
14        Q. In which direction -- there's three
15     alternatives. It can either be incorporated up
16     to the split, it can be entirely included, or it
17     can be entirely excluded. Do you know which of
18     the three --
19        A. Well, some people --
20     MR. PANOFF: Object to the form. Let me get
21     the objections in first.
22     THE WITNESS: It can be up to the split --
23     okay. No, I don't. It's my understanding that
24     it would entail the split, but I don't recall

179

1     further.
2     BY MR. KASPER:
3        Q. Okay. Then how are we supposed to
4     figure it out?
5     MR. PANOFF: Object to the form to the extent
6     it calls for speculation.
7     THE WITNESS: Look at CD 3 and 4 and...
8     BY MR. KASPER:
9        Q. If we're trying to replicate what you
10     did, we have to know what you did with the
11     splits, right?
12     MR. PANOFF: Object to the form to the extent
13     it calls for speculation.
14     THE WITNESS: I don't recall what -- how that
15     was done.
16     MR. KASPER: Okay. Could I move on to
17     plaintiff's exhibit number -- Engstrom Number
18     14.
19        (Whereupon, Deposition Exhibit
20        No. 14 was marked for
21        identification.)
22     BY MR. KASPER:
23        Q. That document I presume you have seen?
24        A. Yes.

180

45 (Pages 177 to 180)

EXHIBIT NO. 13
10/25/11 BK

| County | Precinct | VotesCast | EdwardJLechowicz | RoxanneLRochester | RamonOcasioIll |
|--------|----------|-----------|------------------|-------------------|----------------|
| Cook | Wd 1 Pct 1 | 74 | 33 | 8 | 33 |
| Cook | Wd 1 Pct 2 | 47 | 19 | 11 | 17 |
| Cook | Wd 1 Pct 3 | 43 | 10 | 11 | 22 |
| Cook | Wd 1 Pct 4 | 67 | 13 | 19 | 35 |
| Cook | Wd 1 Pct 5 | 60 | 18 | 19 | 23 |
| Cook | Wd 1 Pct 6 | 57 | 21 | 12 | 24 |
| Cook | Wd 1 Pct 7 | 75 | 25 | 15 | 35 |
| Cook | Wd 1 Pct 8 | 64 | 20 | 18 | 26 |
| Cook | Wd 1 Pct 9 | 102 | 34 | 21 | 47 |
| Cook | Wd 1 Pct 10 | 69 | 16 | 26 | 27 |
| Cook | Wd 1 Pct 11 | 41 | 14 | 8 | 19 |
| Cook | Wd 1 Pct 12 | 76 | 24 | 23 | 29 |
| Cook | Wd 1 Pct 13 | 101 | 28 | 21 | 52 |
| Cook | Wd 1 Pct 14 | 90 | 18 | 24 | 48 |
| Cook | Wd 1 Pct 15 | 71 | 15 | 9 | 47 |
| Cook | Wd 1 Pct 16 | 34 | 8 | 10 | 16 |
| Cook | Wd 1 Pct 17 | 47 | 10 | 14 | 23 |
| Cook | Wd 1 Pct 18 | 61 | 17 | 12 | 32 |
| Cook | Wd 1 Pct 19 | 91 | 19 | 6 | 66 |
| Cook | Wd 1 Pct 20 | 75 | 27 | 10 | 38 |
| Cook | Wd 1 Pct 21 | 65 | 20 | 12 | 33 |
| Cook | Wd 1 Pct 22 | 87 | 23 | 12 | 52 |
| Cook | Wd 1 Pct 23 | 50 | 15 | 9 | 26 |
| Cook | Wd 1 Pct 24 | 134 | 33 | 31 | 70 |
| Cook | Wd 1 Pct 25 | 61 | 13 | 19 | 29 |
| Cook | Wd 1 Pct 26 | 45 | 22 | 15 | 8 |
| Cook | Wd 1 Pct 27 | 51 | 10 | 10 | 31 |
| Cook | Wd 1 Pct 28 | 92 | 20 | 27 | 45 |
| Cook | Wd 1 Pct 29 | 72 | 20 | 18 | 34 |
| Cook | Wd 1 Pct 30 | 163 | 52 | 29 | 82 |
| Cook | Wd 1 Pct 31 | 58 | 19 | 10 | 29 |
| Cook | Wd 1 Pct 32 | 89 | 32 | 18 | 39 |
| Cook | Wd 1 Pct 33 | 70 | 18 | 19 | 33 |
| Cook | Wd 1 Pct 34 | 44 | 10 | 5 | 29 |
| Cook | Wd 1 Pct 35 | 31 | 12 | 2 | 17 |
| Cook | Wd 1 Pct 36 | 56 | 20 | 16 | 20 |
| Cook | Wd 1 Pct 37 | 57 | 27 | 14 | 16 |
| Cook | Wd 1 Pct 38 | 44 | 13 | 6 | 25 |
| Cook | Wd 1 Pct 39 | 85 | 28 | 7 | 50 |
| Cook | Wd 1 Pct 40 | 55 | 20 | 14 | 21 |
| Cook | Wd 1 Pct 41 | 104 | 14 | 9 | 81 |
| Cook | Wd 1 Pct 42 | 43 | 15 | 14 | 14 |
| Cook | Wd 1 Pct 43 | 55 | 19 | 14 | 22 |
| Cook | Wd 1 Pct 44 | 45 | 26 | 8 | 11 |
| Cook | Wd 1 Pct 45 | 65 | 10 | 15 | 40 |
| Cook | Wd 1 Pct 46 | 64 | 24 | 10 | 30 |
| Cook | Wd 1 Pct 47 | 34 | 6 | 15 | 13 |
| Cook | Wd 1 Pct 48 | 64 | 21 | 17 | 26 |
| Cook | Wd 1 Pct 49 | 27 | 9 | 6 | 12 |
| Cook | Wd 1 Pct 50 | 53 | 26 | 12 | 15 |
| Cook | Wd 26 Pct 1 | 39 | 19 | 9 | 11 |
| Cook | Wd 26 Pct 3 | 48 | 18 | 15 | 15 |
| Cook | Wd 26 Pct 4 | 53 | 13 | 8 | 32 |
| Cook | Wd 26 Pct 5 | 85 | 39 | 14 | 32 |

PLF000678

| County | Precinct | VotesCast | EdwardJLechowicz | RoxanneLRochester | RamonOcasioIII |
|--------|----------|-----------|------------------|-------------------|----------------|
| Cook | Wd 26 Pct 6 | 69 | 21 | 5 | 43 |
| Cook | Wd 26 Pct 7 | 37 | 16 | 6 | 15 |
| Cook | Wd 26 Pct 8 | 56 | 17 | 16 | 23 |
| Cook | Wd 26 Pct 9 | 41 | 14 | 6 | 21 |
| Cook | Wd 26 Pct 10 | 44 | 9 | 11 | 24 |
| Cook | Wd 26 Pct 11 | 56 | 16 | 9 | 31 |
| Cook | Wd 26 Pct 12 | 44 | 8 | 10 | 26 |
| Cook | Wd 26 Pct 13 | 74 | 19 | 8 | 47 |
| Cook | Wd 26 Pct 14 | 51 | 7 | 10 | 34 |
| Cook | Wd 26 Pct 15 | 47 | 14 | 4 | 29 |
| Cook | Wd 26 Pct 16 | 55 | 19 | 4 | 32 |
| Cook | Wd 26 Pct 18 | 44 | 11 | 6 | 27 |
| Cook | Wd 26 Pct 19 | 91 | 30 | 23 | 38 |
| Cook | Wd 26 Pct 20 | 80 | 19 | 16 | 45 |
| Cook | Wd 26 Pct 21 | 57 | 14 | 16 | 27 |
| Cook | Wd 26 Pct 22 | 44 | 13 | 11 | 20 |
| Cook | Wd 26 Pct 23 | 56 | 17 | 3 | 36 |
| Cook | Wd 26 Pct 24 | 44 | 19 | 8 | 17 |
| Cook | Wd 26 Pct 25 | 30 | 5 | 8 | 17 |
| Cook | Wd 26 Pct 26 | 58 | 13 | 9 | 36 |
| Cook | Wd 26 Pct 27 | 65 | 22 | 5 | 38 |
| Cook | Wd 26 Pct 28 | 18 | 3 | 2 | 13 |
| Cook | Wd 26 Pct 29 | 50 | 19 | 9 | 22 |
| Cook | Wd 26 Pct 30 | 37 | 9 | 5 | 23 |
| Cook | Wd 26 Pct 31 | 73 | 16 | 7 | 50 |
| Cook | Wd 26 Pct 32 | 75 | 15 | 15 | 45 |
| Cook | Wd 26 Pct 34 | 61 | 18 | 11 | 32 |
| Cook | Wd 26 Pct 35 | 58 | 27 | 11 | 20 |
| Cook | Wd 26 Pct 36 | 57 | 16 | 8 | 33 |
| Cook | Wd 26 Pct 37 | 39 | 13 | 11 | 15 |
| Cook | Wd 26 Pct 38 | 38 | 15 | 6 | 17 |
| Cook | Wd 26 Pct 39 | 31 | 9 | 4 | 18 |
| Cook | Wd 26 Pct 40 | 33 | 9 | 5 | 19 |
| Cook | Wd 26 Pct 41 | 54 | 9 | 5 | 40 |
| Cook | Wd 26 Pct 42 | 37 | 4 | 7 | 26 |
| Cook | Wd 26 Pct 43 | 54 | 17 | 8 | 29 |
| Cook | Wd 26 Pct 44 | 33 | 10 | 8 | 15 |
| Cook | Wd 26 Pct 45 | 64 | 12 | 17 | 35 |
| Cook | Wd 26 Pct 46 | 43 | 14 | 11 | 18 |
| Cook | Wd 26 Pct 47 | 47 | 13 | 10 | 24 |
| Cook | Wd 26 Pct 48 | 74 | 21 | 13 | 40 |
| Cook | Wd 26 Pct 49 | 49 | 16 | 10 | 23 |
| Cook | Wd 26 Pct 50 | 32 | 15 | 6 | 11 |
| Cook | Wd 26 Pct 51 | 67 | 21 | 12 | 34 |
| Cook | Wd 26 Pct 52 | 17 | 10 | 3 | 4 |
| Cook | Wd 26 Pct 53 | 30 | 13 | 4 | 13 |
| Cook | Wd 26 Pct 54 | 59 | 13 | 12 | 34 |
| Cook | Wd 26 Pct 55 | 36 | 14 | 6 | 16 |
| Cook | Wd 26 Pct 56 | 58 | 16 | 13 | 29 |
| Cook | Wd 26 Pct 57 | 48 | 9 | 13 | 26 |
| Cook | Wd 26 Pct 58 | 43 | 8 | 10 | 25 |
| Cook | Wd 26 Pct 59 | 84 | 19 | 33 | 32 |
| Cook | Wd 26 Pct 60 | 57 | 9 | 12 | 36 |
| Cook | Wd 26 Pct 61 | 35 | 13 | 3 | 19 |

PLF000679

| County | Precinct | VotesCast | EdwardJLechowicz | RoxanneLRochester | RamonOcasioIII |
|--------|----------|-----------|------------------|-------------------|----------------|
| Cook | Wd 26 Pct 62 | 78 | 26 | 10 | 42 |
| Cook | Wd 26 Pct 63 | 22 | 4 | 2 | 16 |
| Cook | Wd 27 Pct 4 | 73 | 31 | 17 | 25 |
| Cook | Wd 27 Pct 10 | 164 | 82 | 63 | 19 |
| Cook | Wd 27 Pct 11 | 104 | 57 | 35 | 12 |
| Cook | Wd 27 Pct 13 | 50 | 18 | 16 | 16 |
| Cook | Wd 27 Pct 15 | 24 | 2 | 2 | 20 |
| Cook | Wd 27 Pct 18 | 47 | 16 | 30 | 1 |
| Cook | Wd 27 Pct 27 | 53 | 1 | 31 | 21 |
| Cook | Wd 27 Pct 30 | 70 | 15 | 26 | 29 |
| Cook | Wd 27 Pct 32 | 74 | 26 | 32 | 16 |
| Cook | Wd 27 Pct 35 | 64 | 31 | 17 | 16 |
| Cook | Wd 27 Pct 38 | 57 | 20 | 15 | 22 |
| Cook | Wd 27 Pct 41 | 78 | 31 | 30 | 17 |
| Cook | Wd 27 Pct 53 | 44 | 18 | 19 | 7 |
| Cook | Wd 27 Pct 54 | 46 | 17 | 19 | 10 |
| Cook | Wd 27 Pct 56 | 103 | 24 | 60 | 19 |
| Cook | Wd 29 Pct 7 | 10 | 1 | 2 | 7 |
| Cook | Wd 30 Pct 4 | 61 | 27 | 10 | 24 |
| Cook | Wd 30 Pct 5 | 44 | 14 | 5 | 25 |
| Cook | Wd 30 Pct 19 | 50 | 24 | 9 | 17 |
| Cook | Wd 30 Pct 20 | 60 | 20 | 5 | 35 |
| Cook | Wd 30 Pct 21 | 91 | 30 | 12 | 49 |
| Cook | Wd 30 Pct 22 | 82 | 21 | 14 | 47 |
| Cook | Wd 30 Pct 23 | 70 | 22 | 13 | 35 |
| Cook | Wd 30 Pct 24 | 81 | 37 | 7 | 37 |
| Cook | Wd 30 Pct 26 | 49 | 11 | 9 | 29 |
| Cook | Wd 30 Pct 27 | 99 | 24 | 14 | 61 |
| Cook | Wd 30 Pct 29 | 35 | 8 | 6 | 21 |
| Cook | Wd 30 Pct 31 | 57 | 14 | 9 | 34 |
| Cook | Wd 30 Pct 32 | 29 | 10 | 12 | 7 |
| Cook | Wd 30 Pct 33 | 74 | 22 | 8 | 44 |
| Cook | Wd 30 Pct 35 | 89 | 44 | 9 | 36 |
| Cook | Wd 30 Pct 40 | 72 | 31 | 6 | 35 |
| Cook | Wd 30 Pct 41 | 81 | 30 | 9 | 42 |
| Cook | Wd 31 Pct 1 | 42 | 22 | 6 | 14 |
| Cook | Wd 31 Pct 2 | 58 | 19 | 8 | 31 |
| Cook | Wd 31 Pct 4 | 67 | 32 | 12 | 23 |
| Cook | Wd 31 Pct 5 | 82 | 35 | 13 | 34 |
| Cook | Wd 31 Pct 6 | 73 | 24 | 14 | 35 |
| Cook | Wd 31 Pct 7 | 64 | 13 | 9 | 42 |
| Cook | Wd 31 Pct 9 | 12 | 5 | 4 | 3 |
| Cook | Wd 31 Pct 10 | 33 | 19 | 3 | 11 |
| Cook | Wd 31 Pct 11 | 37 | 16 | 7 | 14 |
| Cook | Wd 31 Pct 12 | 77 | 30 | 11 | 36 |
| Cook | Wd 31 Pct 13 | 49 | 11 | 10 | 28 |
| Cook | Wd 31 Pct 14 | 43 | 14 | 5 | 24 |
| Cook | Wd 31 Pct 17 | 65 | 26 | 8 | 31 |
| Cook | Wd 31 Pct 18 | 49 | 28 | 3 | 18 |
| Cook | Wd 31 Pct 19 | 74 | 43 | 5 | 26 |
| Cook | Wd 31 Pct 20 | 58 | 18 | 10 | 30 |
| Cook | Wd 31 Pct 21 | 83 | 28 | 14 | 41 |
| Cook | Wd 31 Pct 22 | 47 | 14 | 10 | 23 |
| Cook | Wd 31 Pct 23 | 43 | 21 | 2 | 20 |

PLF000680

| County | Precinct | VotesCast | EdwardJLechowicz | RoxanneLRochester | RamonOcasioIII |
|--------|----------|-----------|------------------|-------------------|----------------|
| Cook | Wd 31 Pct 24 | 64 | 17 | 5 | 42 |
| Cook | Wd 31 Pct 25 | 80 | 27 | 7 | 46 |
| Cook | Wd 31 Pct 27 | 70 | 27 | 12 | 31 |
| Cook | Wd 31 Pct 28 | 64 | 25 | 10 | 29 |
| Cook | Wd 31 Pct 30 | 75 | 41 | 11 | 23 |
| Cook | Wd 31 Pct 31 | 84 | 39 | 15 | 30 |
| Cook | Wd 31 Pct 32 | 83 | 31 | 14 | 38 |
| Cook | Wd 31 Pct 33 | 60 | 24 | 11 | 25 |
| Cook | Wd 31 Pct 34 | 49 | 12 | 5 | 32 |
| Cook | Wd 31 Pct 35 | 62 | 44 | 4 | 14 |
| Cook | Wd 31 Pct 36 | 106 | 48 | 13 | 45 |
| Cook | Wd 31 Pct 37 | 67 | 20 | 12 | 35 |
| Cook | Wd 31 Pct 39 | 47 | 13 | 8 | 26 |
| Cook | Wd 31 Pct 40 | 51 | 22 | 6 | 23 |
| Cook | Wd 31 Pct 41 | 59 | 33 | 4 | 22 |
| Cook | Wd 31 Pct 42 | 84 | 34 | 13 | 37 |
| Cook | Wd 31 Pct 44 | 58 | 27 | 6 | 25 |
| Cook | Wd 31 Pct 46 | 70 | 36 | 10 | 24 |
| Cook | Wd 31 Pct 47 | 95 | 52 | 9 | 34 |
| Cook | Wd 31 Pct 48 | 64 | 29 | 12 | 23 |
| Cook | Wd 31 Pct 49 | 46 | 22 | 7 | 17 |
| Cook | Wd 31 Pct 50 | 64 | 26 | 10 | 28 |
| Cook | Wd 31 Pct 51 | 55 | 24 | 7 | 24 |
| Cook | Wd 32 Pct 1 | 90 | 40 | 21 | 29 |
| Cook | Wd 32 Pct 2 | 89 | 15 | 20 | 54 |
| Cook | Wd 32 Pct 3 | 73 | 34 | 10 | 29 |
| Cook | Wd 32 Pct 4 | 118 | 52 | 24 | 42 |
| Cook | Wd 32 Pct 5 | 66 | 29 | 14 | 23 |
| Cook | Wd 32 Pct 6 | 95 | 63 | 12 | 20 |
| Cook | Wd 32 Pct 9 | 74 | 23 | 19 | 32 |
| Cook | Wd 32 Pct 11 | 60 | 30 | 9 | 21 |
| Cook | Wd 32 Pct 12 | 69 | 21 | 13 | 35 |
| Cook | Wd 32 Pct 14 | 82 | 40 | 13 | 29 |
| Cook | Wd 32 Pct 15 | 41 | 15 | 16 | 10 |
| Cook | Wd 32 Pct 16 | 104 | 60 | 15 | 29 |
| Cook | Wd 32 Pct 17 | 72 | 44 | 14 | 14 |
| Cook | Wd 32 Pct 19 | 52 | 20 | 13 | 19 |
| Cook | Wd 32 Pct 20 | 81 | 42 | 22 | 17 |
| Cook | Wd 32 Pct 24 | 64 | 26 | 17 | 21 |
| Cook | Wd 32 Pct 26 | 82 | 50 | 16 | 16 |
| Cook | Wd 32 Pct 27 | 32 | 16 | 7 | 9 |
| Cook | Wd 32 Pct 28 | 73 | 31 | 22 | 20 |
| Cook | Wd 32 Pct 29 | 90 | 39 | 29 | 22 |
| Cook | Wd 32 Pct 30 | 55 | 17 | 13 | 25 |
| Cook | Wd 32 Pct 31 | 103 | 37 | 22 | 44 |
| Cook | Wd 32 Pct 33 | 74 | 30 | 15 | 29 |
| Cook | Wd 32 Pct 34 | 105 | 50 | 18 | 37 |
| Cook | Wd 32 Pct 35 | 129 | 76 | 29 | 24 |
| Cook | Wd 32 Pct 36 | 84 | 20 | 32 | 32 |
| Cook | Wd 32 Pct 40 | 84 | 28 | 28 | 28 |
| Cook | Wd 32 Pct 41 | 92 | 35 | 21 | 36 |
| Cook | Wd 32 Pct 42 | 95 | 33 | 31 | 31 |
| Cook | Wd 32 Pct 45 | 85 | 37 | 21 | 27 |
| Cook | Wd 32 Pct 46 | 58 | 37 | 12 | 9 |

PLF000681

| County | Precinct | VotesCast | EdwardJLechowicz | RoxanneLRochester | RamonOcasioIII |
|--------|----------|-----------|------------------|-------------------|----------------|
| Cook | Wd 32 Pct 52 | 46 | 22 | 12 | 12 |
| Cook | Wd 33 Pct 1 | 137 | 74 | 21 | 42 |
| Cook | Wd 33 Pct 2 | 155 | 76 | 37 | 42 |
| Cook | Wd 33 Pct 3 | 138 | 65 | 24 | 49 |
| Cook | Wd 33 Pct 4 | 131 | 70 | 20 | 41 |
| Cook | Wd 33 Pct 6 | 179 | 109 | 29 | 41 |
| Cook | Wd 33 Pct 7 | 237 | 71 | 44 | 122 |
| Cook | Wd 33 Pct 8 | 111 | 49 | 23 | 39 |
| Cook | Wd 33 Pct 10 | 235 | 164 | 37 | 34 |
| Cook | Wd 33 Pct 11 | 152 | 81 | 23 | 48 |
| Cook | Wd 33 Pct 12 | 203 | 125 | 32 | 46 |
| Cook | Wd 33 Pct 13 | 209 | 113 | 38 | 58 |
| Cook | Wd 33 Pct 15 | 129 | 55 | 32 | 42 |
| Cook | Wd 33 Pct 16 | 130 | 59 | 28 | 43 |
| Cook | Wd 33 Pct 17 | 186 | 95 | 40 | 51 |
| Cook | Wd 33 Pct 19 | 165 | 83 | 27 | 55 |
| Cook | Wd 33 Pct 20 | 134 | 71 | 18 | 45 |
| Cook | Wd 33 Pct 21 | 177 | 87 | 37 | 53 |
| Cook | Wd 33 Pct 22 | 230 | 146 | 29 | 55 |
| Cook | Wd 33 Pct 23 | 151 | 71 | 34 | 46 |
| Cook | Wd 33 Pct 24 | 215 | 55 | 61 | 99 |
| Cook | Wd 33 Pct 25 | 170 | 63 | 49 | 58 |
| Cook | Wd 33 Pct 26 | 114 | 44 | 21 | 49 |
| Cook | Wd 33 Pct 27 | 81 | 35 | 15 | 31 |
| Cook | Wd 35 Pct 1 | 94 | 25 | 20 | 49 |
| Cook | Wd 35 Pct 2 | 88 | 26 | 11 | 51 |
| Cook | Wd 35 Pct 3 | 62 | 12 | 18 | 32 |
| Cook | Wd 35 Pct 4 | 121 | 43 | 20 | 58 |
| Cook | Wd 35 Pct 5 | 105 | 27 | 16 | 62 |
| Cook | Wd 35 Pct 6 | 115 | 41 | 12 | 62 |
| Cook | Wd 35 Pct 7 | 123 | 23 | 27 | 73 |
| Cook | Wd 35 Pct 8 | 91 | 15 | 13 | 63 |
| Cook | Wd 35 Pct 9 | 105 | 20 | 28 | 57 |
| Cook | Wd 35 Pct 10 | 106 | 34 | 15 | 57 |
| Cook | Wd 35 Pct 11 | 57 | 20 | 10 | 27 |
| Cook | Wd 35 Pct 12 | 131 | 42 | 24 | 65 |
| Cook | Wd 35 Pct 14 | 142 | 29 | 34 | 79 |
| Cook | Wd 35 Pct 15 | 105 | 22 | 16 | 67 |
| Cook | Wd 35 Pct 16 | 117 | 21 | 26 | 70 |
| Cook | Wd 35 Pct 17 | 118 | 28 | 23 | 67 |
| Cook | Wd 35 Pct 18 | 111 | 24 | 22 | 65 |
| Cook | Wd 35 Pct 19 | 108 | 24 | 25 | 59 |
| Cook | Wd 35 Pct 20 | 98 | 30 | 18 | 50 |
| Cook | Wd 35 Pct 21 | 99 | 34 | 18 | 47 |
| Cook | Wd 35 Pct 23 | 69 | 15 | 9 | 45 |
| Cook | Wd 35 Pct 24 | 61 | 22 | 14 | 25 |
| Cook | Wd 35 Pct 25 | 85 | 15 | 19 | 51 |
| Cook | Wd 35 Pct 26 | 135 | 38 | 36 | 61 |
| Cook | Wd 35 Pct 27 | 155 | 34 | 35 | 86 |
| Cook | Wd 35 Pct 28 | 105 | 13 | 19 | 73 |
| Cook | Wd 35 Pct 29 | 117 | 41 | 24 | 52 |
| Cook | Wd 35 Pct 30 | 141 | 30 | 25 | 86 |
| Cook | Wd 35 Pct 31 | 49 | 10 | 14 | 25 |
| Cook | Wd 35 Pct 32 | 89 | 14 | 21 | 54 |

| County | Precinct | VotesCast | EdwardJLechowicz | RoxanneLRochester | RamonOcasioIII |
|--------|----------|-----------|------------------|-------------------|----------------|
| Cook | Wd 35 Pct 34 | 105 | 20 | 25 | 60 |
| Cook | Wd 35 Pct 35 | 122 | 32 | 12 | 78 |
| Cook | Wd 35 Pct 36 | 58 | 17 | 11 | 30 |
| Cook | Wd 37 Pct 1 | 81 | 35 | 10 | 36 |
| Cook | Wd 37 Pct 2 | 115 | 43 | 51 | 21 |
| Cook | Wd 37 Pct 3 | 66 | 20 | 31 | 15 |
| Cook | Wd 37 Pct 10 | 156 | 63 | 63 | 30 |
| Cook | Wd 37 Pct 12 | 73 | 20 | 30 | 23 |
| Cook | Wd 37 Pct 19 | 106 | 34 | 15 | 57 |
| Cook | Wd 37 Pct 22 | 81 | 56 | 22 | 3 |
| Cook | Wd 37 Pct 39 | 89 | 41 | 15 | 33 |
| Cook | Wd 37 Pct 42 | 76 | 21 | 23 | 32 |
| Cook | Wd 47 Pct 15 | 115 | 54 | 28 | 33 |
| Cook | Wd 47 Pct 21 | 135 | 53 | 31 | 51 |
| Cook | Wd 47 Pct 40 | 88 | 26 | 25 | 37 |

PLF000683

Allan Lichtman                                        October 20, 2011

1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| COMMITTEE FOR A FAIR AND | ) | |
| BALANCED MAP, JUDY BIGGERT, | ) | |
| ROBERT J. GOLD, RANDY HULTGREN, | ) | No. 1:11-cv-05065 |
| ADAM KINZINGER, DONALD | ) | |
| MANZULLO, PETER J. ROSKAM, | ) | |
| BOBBY SCHILLING, AARON SCHOCK, | ) | |
| JOHN M. SHIMKUS, JOE WALSH, | ) | |
| RALPH RANGEL, LOU SANDOVAL, | ) | |
| LUIS SANABRIA, MICHELLE | ) | |
| CABALLERO, EDMUND BREZINSKI, | ) | |
| and LAURA WAXWEILER, | ) | THE VIDEOTAPED |
| Plaintiffs, | ) | DEPOSITION OF |
| -vs- | ) | ALLAN LICHTMAN |
| ILLINOIS STATE BOARD OF | ) | OCTOBER 20, 2011 |
| ELECTIONS, WILLIAM M. | ) | |
| McGUFFAGE, JESSE R. SMART, | ) | |
| BRYAN A. SCHNEIDER, BETTY J. | ) | |
| COFFRIN, HAROLD D. BYERS, | ) | |
| JUDITH C. RICE, CHARLES W. | ) | |
| SCHOLZ, and ERNEST L. GOWEN, | ) | |
| Defendants. | ) | |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

8

1     but obviously answer the questions to the best of

2     your ability.

3              We talked briefly before we went on the

4     record that there may be a need for you to take some

5     breaks, that's absolutely fine.  The only thing that

6     I would ask is that you not take a break while a

7     question is pending.  Obviously, if you need to

8     confer with counsel before you can answer the

9     question, feel free to do so.

10             We will probably ordinarily go in hour

11    increments.  We're all going to try to move as

12    expeditiously as possible here today.  I understand

13    that you have a deadline at the end of the day, and

14    we'll try to get you out of here as quickly as

15    possible.

16             I think that's enough of the basics,

17    which you probably heard many, many, many times over

18    the course of your career.

19             Sir, you have in front of you --

20         MR. KASPER:  Before we begin.

21         MS. LIGHTFOOT:  Go ahead.

22         MR. KASPER:  And I hate to interrupt you.

23             You talked about the three reports that

24    Dr. Lichtman did.  In the interest of disclosure,



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Allan Lichtman                                    October 20, 2011

9

1   based on the evidence -- or the disclosure that you

2   gave us yesterday, Dr. Lichtman intends to prepare

3   another report over the weekend, which we'll get to

4   you as soon as it's prepared, for reasons that he is

5   better equipped to explain than we lawyers are.  But

6   it has to do with the disclosure that you gave us

7   yesterday involving the election results, which is

8   different from the one that you gave us before he

9   prepared his initial reports.

10         MS. LIGHTFOOT:  You're talking about the

11  supplemental production that we provided in

12  connection with our expert's rebuttal report?

13         MR. KASPER:  Correct.

14         MS. LIGHTFOOT:  Well, we can talk about that.

15         MR. KASPER:  That's fine.

16  BY MS. LIGHTFOOT:

17         Q.    Why don't we just talk about that now.

18               I take it, sir, that you have

19  prepared -- you prepared a new report over the

20  course the weekend based on information --

21         MR. KASPER:  No, he's going to.

22  BY MS. LIGHTFOOT:

23         Q.    Oh, you're going to?

24         A.    Let me explain.  I think it's best that,



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Allan Lichtman                                    October 20, 2011

10

1    you know, I explain it.

2              When I got Dr. Engstrom's initial report

3    he had talked about an area of interest that he was

4    looking at that encompassed the Adopted Plan

5    District 4 and the plaintiffs' plan District 3 and

6    4.   What was unclear because he never explicitly

7    made a statement about this was when he analyzed his

8    elections did he analyze elections for jurisdictions

9    or districts that touched upon or encompassed what

10   he called his area of interest or did he take from

11   within those elections only that part that was

12   absolutely co-terminus with his area of interest.

13   That was absolutely unclear from the language that

14   he used in his report.

15             So what does an expert do?  An expert

16   goes to the tables.  It's always the tables that

17   count.  And one looks at the tables.  The tables

18   were simply labeled, for example, countywide

19   elections, citywide elections, and then there were a

20   label district elections.  There was no indication

21   whatsoever that he had picked and chosen particular

22   parts of the county --

23             Q.    Doctor, I hate to interrupt you, but I

24   think if we could get to the point of what the scope



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Allan Lichtman                                    October 20, 2011

                                                                11

1      of your new --

2           A.     I'm about to get there.

3           Q.     Okay.  That would be helpful.

4                  Obviously we don't necessarily -- we do

5      not agree with your characterization of

6      Dr. Engstom's reports, but --

7           A.     I understand.

8           Q.     So maybe if we could move beyond the

9      speech and get to the --

10          A.     I'm about to get past this.

11          Q.     That would be helpful.

12          A.     My next two points are real simple.

13                 So you go to the tables and I said there

14     is no indication that he picked up a piece.  And, of

15     course, the proof of the pudding is always in the

16     disclosure.  And I looked at the disclosure, and I

17     have it right here in front of me, you can look at

18     it if you like, it's too big to print out, but it's

19     on my printout.  This is the original disclosure for

20     one of the elections he looked at and you can see it

21     has every single countywide precinct, and I was

22     assured that this was what Dr. Engstrom relied on.

23     Indeed, in his report he said, you know, look at the

24     disclosure, you know, even more important than what



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Allan Lichtman                                    October 20, 2011

12

1     I say in my report.

2              Q.     You know what --

3              A.     Then yesterday --

4              Q.     Hold on one second.  Hold on one second.

5              A.     Yeah.

6              Q.     I'm happy for you to tell me what the

7      scope of your new report is, but what I'm not

8      intending to do, particularly given that you've

9      asked for us to get you out of here by the end of

10     the day, is to allow you to give a 15-minute

11     speech --

12             A.     I will finish in two minutes.

13             Q.     -- about critiquing --

14             A.     I'm not critiquing anything.

15             Q.     You are, but that's okay.  But I'm going

16     to ask you now for the second time tell me what the

17     new scope of your report is so we can get that on

18     the record and move forward.

19             A.     All right.  When I got the new

20     disclosure for the first time late yesterday

21     afternoon, it was totally different.  It was in

22     spreadsheet form and it was not all of the

23     precincts, it was just a small piece of the

24     precincts --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Allan Lichtman                                    October 20, 2011

13

1        Q.     I'm losing my patience with you, Doctor.

2        A.     -- that Dr. Engstrom had relied on.  So

3   the actual analysis he did was totally different

4   from what I had relied on from the original

5   disclosure --

6        Q.     Stop.

7        A.     -- which means --

8        Q.     Stop.  Stop.  Please.  Okay.  Now I've

9   asked you three time just to tell me in simple words

10  what the scope of your new report is.

11            Hold on.  What you've given us for the

12  last now almost three, four, five minutes, I've lost

13  count, is a nice speech and critique that completely

14  is misleading as to what Professor Engstrom's

15  initial report said what the underlying data was,

16  and I don't appreciate this, sir.

17            So here's what we're going to do.  We're

18  going -- I'm going to go and I'm going to ask you

19  the questions that I was normally going to ask you.

20  I'm going to have a discussion off the record with

21  your counsel and perhaps he can give me a short

22  synopsis of what the new scope is since you --

23            MR. KASPER:  That's fine.

24



Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

ALLAN LICHTMAN                                    November 2, 2011

---

**134**

```
        IN THE UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF ILLINOIS
                  EASTERN DIVISION
COMMITTEE FOR A FAIR AND          )
BALANCED MAP, JUDY BIGGERT,       )
ROBERT J. DOLD, RANDY HULTGREN,   ) No. 1:11-cv-05065
ADAM KINZINGER, DONALD            )
MANZULLO, PETER J. ROSKAM,        )
BOBBY SCHILLING, AARON SCHOCK,    )
JOHN M. SHIMKUS, JOE WALSH,       )
RALPH RANGEL, LOU SANDOVAL,       )
LUIS SANABRIA, MICHELLE           )
CABALLERO, EDMUND BREZINSKI,      )
and LAURA WAXWEILER,.             )  CONTINUED
        Plaintiffs,   )  DEPOSITION OF
             -vs-     )  ALLAN LICHTMAN
ILLINOIS STATE BOARD OF      )  NOVEMBER 2, 2011
ELECTIONS, WILLIAM M.        )
McGUFFAGE, JESSE R. SMART,   )  11:47 a.m.
BRYAN A. SCHNEIDER, BETTY J. )
COFFRIN, HAROLD D. BYERS,    )
JUDITH C. RICE, CHARLES W.   )
SCHOLZ, and ERNEST L. GOWEN, )
        Defendants.    )
```

---

**135**

```
 1          The videotaped deposition of ALLAN
 2   LICHTMAN resumed pursuant to adjournment at
 3   Suite 3200, 71 South Wacker Drive, Chicago,
 4   Illinois.
 5
 6   PRESENT:
 7       MAYER BROWN LLP,
 8       (71 South Wacker Drive, Suite 3200,
 9       Chicago, Illinois 60606-4637,
10       312-782-0600), by:
11       MS. LORI E. LIGHTFOOT,
12       llightfoot@mayerbrown.com, and
13       MR. MICHAEL D. FRISCH,
14       mfrisch@mayerbrown.com,
15          appeared on behalf of the Plaintiffs;
16
17       FLETCHER O'BRIEN KASPER & NOTTAGE, PC,
18       (222 North LaSalle Street, Suite 300,
19       Chicago, Illinois 60601,
20       312-704-3292), by:
21       MR. MICHAEL J. KASPER,
22       mjkasper60@mac.com,
23          appeared on behalf of the Defendants.
24
```

---

**136**

```
 1   ALSO PRESENT:
 2       MR. JOSEPH ELSEY, Videographer,
 3       Esquire Deposition Solutions.
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22   REPORTED BY:  ANNE E. FOGARTY, CSR No. 84-3870.
23
24
```

---

**137**

```
 1          (WHEREUPON, certain documents were
 2          marked Lichtman Deposition Exhibits
 3          Nos. 18 and 19, for identification, as
 4          of 11/02/2011.)
 5       THE VIDEOGRAPHER:  Good morning.  We are going
 6   on the video record at 11:47 a.m.
 7          This is Tape 1 to the continued
 8   videotaped deposition of Allan Lichtman in the
 9   matter of Committee For a Fair and Balanced Map,
10   et al., versus Illinois State Board of Elections,
11   et al., being heard before the U.S. District Court
12   for the Northern District of Illinois, Eastern
13   Division, case number 1:11-cv-05065.  This
14   deposition is being held at 71 South Wacker Drive,
15   Chicago, Illinois, on November 2, 2011.
16          My name is Joseph Elsey and I'm the
17   videographer.  The court reporter is Anne Fogarty.
18          Counsel, will you please introduce
19   yourselves and affiliations and then we can proceed.
20       MR. FRISCH:  Michael Frisch for the
21   plaintiffs.
22       MS. LIGHTFOOT:  Lori Lightfoot on behalf of
23   the plaintiff.
24       MR. KASPER:  Michael Kasper for the
```

---



Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

ALLAN LICHTMAN                                          November 2, 2011

266

1  ethnicity are one of the bases by which communities
2  are formed in this country.
3      Q.   Doctor, Ms. Lightfoot was asking you
4  some questions about the landslide victory
5  threshold.  Do you remember that from your prior
6  scholarship?
7      A.   I do.
8      Q.   And in an area with mixed race, say
9  Latinos and white, where both races prefer the same
10  candidate, is it more likely that the preferred
11  candidate would reach that landslide threshold?
12      MS. LIGHTFOOT:  Object to the form,
13  foundation.
14  BY THE WITNESS:
15      A.   Yes, reach or exceed.  And, in fact, I
16  talked about that in my supplemental report where I
17  said, you know, the elections that are less
18  competitive are those where the various racial
19  groups come together and unite behind a candidate of
20  choice.
21  BY MR. KASPER:
22      Q.   Okay.  And there was also some questions
23  regarding the protection of incumbents.  Do you
24  recall that?

267

1      A.   I do.
2      Q.   And are you aware of whether or not it's
3  possible to protect all the incumbents equally in
4  this current redistricting plan?
5      MS. LIGHTFOOT:  Object to the form,
6  foundation.
7  BY THE WITNESS:
8      A.   I don't see how you can when you lose a
9  district.  You got to make -- you got to make
10  choices.
11  BY MR. KASPER:
12      Q.   What do you mean by that?
13      A.   That is, Illinois went down a district
14  as a result of the post-census reapportionment.  So
15  when you're reducing the number of districts, that
16  means choices have to be made among incumbents.  And
17  in my experience even when you don't lose a district
18  often choices have to be made because of the need to
19  redistribute population.  And I noticed here in
20  Illinois lots of districts needed readjustments of
21  population.
22      Q.   Doctor, have you formed an opinion about
23  whether or not race was a predominant factor in the
24  drawing of any district in the Adopted Plan?

268

1      A.   I have.
2      Q.   And what is that opinion?
3      A.   That race was not the predominant
4  factor.
5      Q.   Okay.  And there was some discussion
6  about the ecological inference method.  Are you
7  familiar with that method?
8      A.   I am.
9      Q.   And does that method apply a method of
10  bounds standard as well?
11      A.   Yes.  In fact, I can directly quote from
12  Dr. Engstrom's initial report.  Footnote 4, Page 5.
13  "The EI procedure further incorporates the method of
14  bounds in the analysis which precludes group
15  estimates in exceeding real world limits such as
16  estimates of a group support for a candidate or
17  group of candidates being over 100 percent or below
18  0 percent as happens with ER."
19      Q.   Okay.  And, Dr. Lichtman, you were
20  present at Dr. Engstrom's deposition.  Do you recall
21  discussion regarding the analysis of split precincts
22  in his area of interest?
23      A.   I do.
24      Q.   And do you recall when I asked him how

269

1  split precincts were handled he answered that they
2  were accommodated in some way?  Do you recall that?
3      A.   I recall.
4      MS. LIGHTFOOT:  Object to the form,
5  foundation.
6  BY THE WITNESS:
7      A.   I recall his answers on that very well.
8  BY MR. KASPER:
9      Q.   Have you done any further analysis of
10  the splint precincts in Dr. Engstrom's analysis?
11      A.   I have.
12      Q.   And do you have any comments regarding
13  that?
14      A.   I do.
15      I was able to do an analysis of the
16  split precincts only after his data disclosures and
17  only after I sat in on his deposition, which I
18  believe was about a week ago.  And my very clear
19  recollection is he said the split precincts were
20  accommodated in the data that he received and that
21  he did not do any further adjustments for split
22  precincts.
23      And there are very significant problems
24  with how the split precincts were accommodated, or I



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

ALLAN LICHTMAN                                    November 2, 2011

270

1  would rather say not accommodated in the data
2  received by Dr. Engstrom, that created an extremely
3  inaccurate database either for his so-called
4  reconstituted elections or for his EI analysis.
5          If I may explain?
6      Q.  Okay. Hold on. Let them catch up.
7      MS. LIGHTFOOT: I think it's appropriate to
8  ask a question. Him giving a multi-paragraph
9  narrative answer isn't appropriate.
10 BY MR. KASPER:
11     Q.  All right. Can you explain?
12     MS. LIGHTFOOT: And move to strike the last
13 answer.
14 BY THE WITNESS:
15     A.  Yes, I can explain.
16         Precincts are not usually split evenly
17 between districts. And sometimes a precinct is
18 split such that its part in one district has zero
19 population and its part in another district has all
20 of the population.
21 BY MR. KASPER:
22     Q.  What's an instance of that?
23     A.  An instance of that would be there are
24 several precincts that are partly in plaintiffs'

271

1  CD 3 and partly in other districts in plaintiffs'
2  plan but that have no population within CD 3.
3          Now --
4      Q.  What would accommodate for that? What
5  would cause that?
6      A.  Because it could be an industrial area,
7  it could be a park, it could be a pond with no
8  residents present. And it's not that uncommon.
9  That happens fairly frequently.
10         In addition, you could have a precinct
11 split such that, and this is also very common, a
12 relatively small proportion of the population, say
13 10, 15, 20, 30 people are in plaintiffs' CD 3 but
14 1,000 are in another district.
15     Q.  When you say another district, do you
16 mean another district other than plaintiffs' CD 4?
17     A.  CD 3. I'm talking about CD 3 at the
18 moment.
19     Q.  Okay.
20     A.  But this would apply to any district,
21 plaintiffs' CD 4 and Adopted CD 4. All three
22 districts in Dr. Engstrom's area of interest would
23 be affected by this.
24         So if we have a precinct that is

272

1  partially in CD 3 with zero population or very small
2  population, you would have to adjust your database
3  in terms of the number of votes cast in that
4  precinct. For example, if there is zero population,
5  then there could be no votes cast in that part of
6  the precinct; that is, for example, within
7  plaintiffs' RD 3.
8          One of the problems with Dr. Engstrom's
9  database is he made no such adjustments. Even when
10 there is zero population, say in plaintiffs' CD 3,
11 or a very small proportion of the population of the
12 precinct, say in plaintiffs' CD 3, his database
13 includes all the votes cast for all the candidates,
14 even though those votes could not possibly have been
15 cast in that part of the precinct that is within
16 plaintiffs' CD 3.
17         The same thing applies to plaintiffs'
18 CD 4 and to Adopted CD 4, the three districts within
19 his so-called area of interest.
20         This makes inaccurate all of his
21 so-called reconstituted elections. That is, when he
22 says, for example, Candidate Alvarez in the 2008
23 State's Attorney primary got a certain percentage in
24 plaintiffs' CD 3 or a certain percentage in

273

1  plaintiffs' CD 4 or a certain percentage in Adopted
2  CD 4, all of those are inaccurate because they
3  include those total votes cast in split precincts
4  where maybe zero population is in each of those
5  districts respectively, or a very small proportion,
6  or even half of it. It's still going to be
7  inaccurate.
8      MS. LIGHTFOOT: Counsel, with all due respect,
9  the Doctor has been going on for by my count at
10 least three minutes uninterrupted without a
11 question. And I think it's appropriate for him not
12 to give, as I said before, long narrative paragraphs
13 of testimony without any specific questions
14 interjecting. So I object to this long narrative
15 form.
16     MR. KASPER: Okay. We're just trying to help
17 you understand this. This is something --
18     MS. LIGHTFOOT: Well, I appreciate it but I'd
19 rather that he have questions put to him and answer
20 questions.
21 BY MR. KASPER:
22     Q.  Okay. Do you have further to say on
23 that subject?
24     A.  Yes, I do.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

ALLAN LICHTMAN                                    November 2, 2011

274

1   Q.  Okay.  Would you please say so.
2   A.  Thank you.
3       A second problem that afflicts all of
4   his reconstituted elections and makes them
5   inaccurate is sometimes he'll double count a
6   precinct.  That is, he'll have the precinct entered
7   twice within a split precinct, entered twice say
8   within plaintiffs' CD 3, plaintiffs' CD 4 or Adopted
9   CD 4, so he is double counting the votes for the
10  candidates within that precinct.
11      And all of these problems also afflict
12  his EI analysis since these same databases are the
13  basis for his EI analysis.  And this explains why he
14  threw out so many precincts, as many as 12 or
15  13 percent in some instances, because he's dividing
16  by those very small numbers.  And, indeed, when you
17  divide the votes cast in the whole precinct by some
18  small segment of the precinct in the district,
19  you're going to get over 100 percent.
20      But even though you don't get over
21  100 percent, and say you get 80 percent or
22  50 percent, those numbers are going to be inaccurate
23  because the numerator is based upon all the votes
24  cast in that precinct and the denominator is based

275

1   only on the voting age population in that piece of
2   the precinct that is within the particular district
3   that you're analyzing.
4       So the database cannot be used
5   accurately either for reconstituted elections or for
6   EI, or for that any matter for any electoral
7   analysis.
8   MS. LIGHTFOOT:  Move to strike.
9   MR. KASPER:  Okay.  No further questions.
10  MS. LIGHTFOOT:  I have a couple follow-up
11  questions.
12      FURTHER EXAMINATION
13  BY MS. LIGHTFOOT:
14  Q.  All this testimony that you just
15  provided regarding the split precinct, is any of
16  that reflected in the supplemental report that you
17  provided on October 27, 2011?
18  A.  I didn't have time because I didn't
19  have --
20  Q.  That's not my question, Doctor.
21  A.  Okay.
22  Q.  Is it in there or is it not in there?
23  A.  It's not in there.
24  MS. LIGHTFOOT:  So I move to strike all that

276

1   testimony as opinion testimony with respect to split
2   precincts.  He clearly had ample opportunity to
3   provide, which he failed to provide and failed to
4   disclose and provide any basis for us to be able to
5   analyze whether he's right or whether he's wrong.
6   And if he tries to testify, obviously, about this
7   we're going to move ahead of time to prevent him
8   from doing so.
9       No further questions.
10  MR. KASPER:  Okay.  Let's go.
11  THE VIDEOGRAPHER:  Going off the video record
12  at 3:58 p.m.  This is the end of Tape No. 4.
13      FURTHER DEPONENT SAITH NAUGHT.
14
15
16
17
18
19
20
21
22
23
24

277

1   STATE OF ILLINOIS )
2                     ) SS:
3   COUNTY OF C O O K )
4       I, ANNE E. FOGARTY, a Notary Public
5   within and for the County of Cook, State of
6   Illinois, and a Certified Shorthand Reporter, CSR
7   No. 84-3870, of said state, do hereby certify:
8       That previous to the commencement of the
9   examination of the witness, the witness was duly
10  sworn to testify the whole truth concerning the
11  matters herein;
12      That the foregoing deposition transcript
13  was reported stenographically by me, was thereafter
14  reduced to typewriting under my personal direction
15  and constitutes a true record of the testimony given
16  and the proceedings had;
17      That the said deposition was taken
18  before me at the time and place specified;
19      That I am not a relative or employee or
20  attorney or counsel, nor a relative or employee of
21  such attorney or counsel for any of the parties
22  hereto, nor interested directly or indirectly in the
23  outcome of this action.
24      IN WITNESS WHEREOF, I do hereunto set my



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

GERALD R. WEBSTER                                    October 21, 2011

. 1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

COMMITTEE FOR A FAIR AND              )

BALANCED MAP, JUDY BIGGERT,           )

ROBERT J. GOLD, RANDY HULTGREN,       ) No. 1-11-cv-05065

ADAM KINZINGER, DONALD                )

MANZULLO, PETER J. ROSKAM,            )

BOBBY SCHILLING, AARON SCHOCK,        )

JOHN M. SHIMKUS, JOE WALSH,           )

RALPH RANGEL, LOU SANDOVAL,           )

LUIS SANABRIA, MICHELLE               )

CABALLERO, EDMUND BREZINSKI,          )

and LAURA WAXWEILER,                  )

                    Plaintiffs,       )

         -vs-                         )   DEPOSITION OF

ILLINOIS STATE BOARD OF               ) GERALD R. WEBSTER

ELECTIONS, WILLIAM M.                 ) OCTOBER 21, 2011

McGUFFAGE, JESSE R. SMART,            )

BRYAN A. SCHNEIDER, BETTY J.          )

COFFRIN, HAROLD D. BYERS,             )

JUDITH C. RICE, CHARLES W.            )

SCHOLZ, and ERNEST L. GOWEN,          )

                    Defendants.       )



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

GERALD R. WEBSTER                                    October 21, 2011

66

1      correct?

2           A.     Yes.

3           Q.     Do you have any findings with respect to

4      the rebuttal report of Dr. Engstrom?

5           A.     I have two concerns in my review of that

6      report.

7           Q.     And could you discuss those concerns?

8           A.     If I could have a copy of the report, I

9      can point out the page numbers.

10          MR. HOLZRICHTER:  I have one copy.  I will not

11     mark it as an exhibit.  Actually, no, I don't have

12     it.  Of Engstrom's rebuttal?  I don't have it.

13          MS. ZLOTOW:  All right.  I have a clean copy,

14     if I can find it.

15          I'm going to mark this as Defendants'

16     Exhibit 1.

17                      (WHEREUPON, a certain document was

18                      marked Defendants' Deposition

19                      Exhibit No. 1, for identification,

20                      as of October 21, 2011.)

21                      (WHEREUPON, the document was

22                      tendered to the witness.)

23     BY MS. ZLOTOW:

24          Q.     Are you familiar with this document?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

GERALD R. WEBSTER                              October 21, 2011

67

1          A.     Yes, ma'am.  I reviewed it yesterday.

2          Q.     And what is it?

3          A.     It is "Expert Report in Response to

4    Dr. Lichtman's Reports by Richard L. Engstrom."

5          Q.     And you stated a moment ago that you had

6    a couple of findings with respect to this report.

7    Could you describe what those are?

8          A.     The first is on page 24 in the first

9    partial paragraph.  Dr. Engstrom writes, "The

10   Polsby-Popper perimeter compactness score for this

11   latest version of this district, .05, continues to

12   reflect the wandering character of the earmuff

13   configuration.  It is just .02 points above the same

14   score for the initial 1991 version of the earmuff."

15              In fact, that's incorrect.  The 2011

16   district is .03 above the original version in 1991.

17         Q.     And you said that there was another

18   finding that you had with respect to this report?

19         A.     Yes, ma'am.

20         Q.     Could you just describe what that is?

21   And if you want to identify for the record the page

22   number.

23         A.     Page 20, the last paragraph.

24   Dr. Engstrom writes, "As a result of that error, I



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

GERALD R. WEBSTER                                    October 21, 2011

68

1    must revise what I had said about the Reock score

2    for CD4 in the Adopted Plan.  I stated in that

3    report that 'The Reock measure ranks CD4 as the

4    least compact district not only in the Adopted Plan,

5    but in either of the plans."

6              This should read, "The Reock measure

7    ranked CD4 as the 13th worst score in the Adopted

8    Plan.  It also ties the second worst in the

9    plaintiffs' plan."

10             I think, first, that Dr. Engstrom means

11   this is the 13th best, not the 13th worst, because

12   it would actually be the sixth worst -- or yes,

13   right, so there's a flip-flop in the

14   characterization.  And I also think it sort of

15   mischaracterizes the score on the Reock test for CD4

16   which is .30.

17        Q.    And how do you think it mischaracterizes

18   that score?

19        A.    The mean for the plan as a whole is .32,

20   so the score of .30 is very close to the mean, and,

21   in fact, 10 of the 18 districts range from plus or

22   minus of .02, from .28 to .32.  So after all is said

23   and done, the Reock score for Congressional

24   District 4 is very much in line with the other



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

GERALD R. WEBSTER                                    October 21, 2011

69

1    scores in the plan and the mean of -- of the plan.

2        Q.    I also wanted to show you another

3    document.

4        MS. ZLOTOW:  We're marking this as

5    Defendants' -- actually, I have to make sure it's

6    the right one.  Yes.  I'm going to mark it as

7    Defendants' Exhibit 2.

8                        (WHEREUPON, a certain document was

9                        marked Defendants' Deposition

10                       Exhibit No. 2, for identification,

11                       as of October 21, 2011.)

12                       (WHEREUPON, the document was

13                       tendered to the witness.)

14   BY MS. ZLOTOW:

15       Q.    If you want to take a moment to review

16   this document.

17             Are you familiar with what's been marked

18   as Defendants' Exhibit 2?

19       A.    Yes, I reviewed this yesterday.  It's

20   entitled CongDem.  It was produced on 10/9/2011, and

21   it is a series of compactness scores for the Adopted

22   Plan.

23       Q.    Do you know who created this document?

24       A.    It's my understanding that Dr. Engstrom



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

78

```
 1     itself lower than most other districts that you've

 2     looked at with only a handful of examples that we

 3     were discussing earlier?

 4         MS. ZLOTOW:  Same objection as to

 5     mischaracterization.

 6     BY THE WITNESS:

 7         A.    Well, there definitely is a handful of

 8     districts that are less than that that I've looked

 9     at.

10         MR. HOLZRICHTER:  Okay.

11         MS. ZLOTOW:  I have additional questions.

12         MR. HOLZRICHTER:  Please go ahead.

13                     FURTHER EXAMINATION

14     BY MS. ZLOTOW:

15         Q.    Dr. Webster, given the findings in your

16     report that the compactness scores for CD4 on the

17     dispersion and perimeter measures are at or above

18     the Pildes and Niemi suggested cutoff levels for low

19     compactness, and given your finding that CD4's level

20     of geographic compactness increased in the Adopted

21     Plan on both measures when comparing the district to

22     its predecessors in the 1991 plan and 2001 benchmark

23     plan, given those findings, are you able to conclude

24     whether or not Congressional District 4 in the
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

GERALD R. WEBSTER                                    October 21, 2011

79

1      Adopted Plan is reasonably compact?

2           A.    Using the Pildes and Niemi benchmarks,

3      yes.  I mean that -- one is at the cutoff point and

4      the other is substantially above the cutoff point.

5      Therefore, based on that numeric analysis, the

6      answer is yes.

7           Q.    Yes what?

8           A.    That CD4 is reasonably compact.

9                        FURTHER EXAMINATION

10     BY MR. HOLZRICHTER:

11          Q.    I'm sorry, the -- when you say "at,"

12     we've been dancing around what the word "at" means.

13     I still don't understand what "at the cutoff" means.

14          MR. COLE:  Well, let her --

15          MR. HOLZRICHTER:  Oh, I'm sorry.

16          MR. COLE:  -- finish her questions.

17          MR. HOLZRICHTER:  Were you -- oh, I thought you

18     were --

19          MS. ZLOTOW:  I think --

20          MR. COLE:  Oh, are you done?

21          MS. ZLOTOW:  I think I'm done.

22          MR. COLE:  Oh, okay.

23          MR. HOLZRICHTER:  Yeah.  Sorry.

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
 3

 4
    COMMITTEE FOR A FAIR AND    )
 5  BALANCED MAP, JUDY          )
    BIGGERT, ROBERT J. DOLD,    )
 6  RANDY HULTGREN, ADAM        )
    KINZINGER, DONALD           )
 7  MANZULLO, PETER J. ROSKAM,  )
    BOBBY SCHILLING, AARON      )
 8  SCHOCK, JOHN M. SHIMKUS,    )
    JOE WALSH, RALPH RANGEL,    )
 9  LOU SANDOVAL, LUIS SANABRIA,)
    MICHELLE CABALLERO,         )
10  EDMUND BREZINSKI, and       )
    LAURA WAXWEILER,            )
11                              )  No.   1:11-cv-5065
              Plaintiffs,       )
12                              )
              vs.               )
13                              )
    ILLINOIS STATE BOARD OF     )
14  ELECTIONS, WILLIAM A.       )
    MCGUFFAGE, JESSE R.         )
15  SMART, BRYAN A. SCHNEIDER,  )
    BETTY J. COFFRIN,           )
16  HAROLD D. BYERS,            )
    JUDITH C. RICE,             )
17  CHARLES W. SCHOLZ, and      )
    ERNEST L. GOWEN,            )
18                              )
              Defendants.       )
19

20        The videotaped deposition of

21  CONGRESSMAN JOHN M. SHIMKUS, called by the

22  Defendants, for examination, taken pursuant to

23  notice, taken before CARYL L. HARDY, a Notary

24  Public within and for the County of Cook, State of
```

RECEIVED
OCT 07 2011
POWER ROGERS & SMITH, P.C.

Page 110

1  form, foundation, compound, and -- go ahead. If
2  you can understand, answer it.
3  BY THE WITNESS:
4     A.  We -- I enjoined in this lawsuit based
5  upon the analysis done by our attorneys. I made no
6  statements until after the lawsuit was filed.
7     MR. BRUCE:  Listen to my question. I
8  didn't designate before or after, Congressman. If
9  you'd listen to my question, I think that might
10 help you answer it. Go ahead. I'll have her read
11 it back to you. If we can read it back to the
12 Congressman, please...
13    (Record read.)
14    MS. LIGHTFOOT:  Same objections.
15 BY THE WITNESS:
16    A.  Yes.
17 BY MR. BRUCE:
18    Q.  And who did you say that to?
19    A.  To numerous people who asked me about the
20 litigation and the lawsuit.
21    Q.  And what is the basis of your statement
22 that there should have been two Hispanic seats and
23 because there was not, that gives you the ability
24 to have this lawsuit heard in federal court?

Page 111

1     MS. LIGHTFOOT:  Congressman, if the sole
2  basis of your information is information that has
3  been provided to you by counsel in the context of a
4  confidential communication, then I'm going to
5  instruct you not to answer. However, if you have
6  other independent bases beyond that, then feel free
7  to answer the question.
8  BY THE WITNESS:
9     A.  And my sole information is based upon
10 information provided by counsel.
11    MR. BRUCE:  Okay. And again, I think I
12 stated my position in the past. I just want to
13 make my record on this.
14    To the extent that Congressman Shimkus or
15 any other Congressman is going to talk about the
16 unfairness of this map based upon information from
17 their counsel and that they intend to testify that
18 it were to be presented on those points, I believe
19 I should have a right to probe and cross-examine
20 them on that point.
21    And so in other words, I think it's
22 supremely unfair and improper for the Plaintiffs in
23 this case to call witnesses who will testify to
24 various aspects of the unfairness of the map while

Page 112

1  at the same time I'm precluded to depose those
2  individuals on those points.
3     MS. LIGHTFOOT:  Nice speech, and we will
4  take this on a question-by-question basis.
5     MR. BRUCE:  It wasn't a speech. It's a
6  legal position that I'm taking.
7  BY MR. BRUCE:
8     Q.  Sir, other than anything that your lawyers
9  have told you, do you have any basis to believe
10 that there should be two Hispanic seats?
11    MS. LIGHTFOOT:  Same admonishment and
12 caution. If you have an independent basis, feel
13 free to answer.
14 BY THE WITNESS:
15    A.  The information I have, based upon the
16 demographics, was based upon the lawsuit and
17 attorney-client privilege.
18 BY MR. BRUCE:
19    Q.  I understand that, and I'm trying to get
20 to the next point. I'm just saying --
21    A.  And I'm reiterating that now.
22    Q.  Okay. You and I and your sole basis in
23 your belief that there should be two Hispanic
24 districts in this Congressional map is based upon

Page 113

1  information that you received from your counsel; is
2  that true?
3     A.  That's true.
4     Q.  All right. Sir, I want to talk to you
5  about some names of people and ask you if you know
6  them personally -- and I'll just go through this
7  quickly -- or do you know who they are.
8     Representative Jim Durkin, do you know
9  Representative Durkin?
10    A.  Yes.
11    Q.  And have you worked with him in the past?
12    A.  He ran for statewide office but not much.
13    Q.  Okay. Do you have any regular interaction
14 with him?
15    A.  No.
16    Q.  Okay. Representative Chapin Rose, do you
17 know him?
18    A.  Yes, I do.
19    Q.  And do you have regular interaction with
20 him?
21    A.  No.
22    Q.  And representative Tim Schmitz, do you
23 know him, S-c-h-m-i-t-z?
24    A.  I have -- I've met him.

Page 114

1    Q.   Okay.
2    A.   I do know him.
3    Q.   Okay.  And do you have any regular
4  interaction with him?
5    A.   No.
6    Q.   Lastly, Representative Jill Tracy; do you
7  know Representative Tracy?
8    A.   I do.
9         MS. LIGHTFOOT:  Could you -- I'm sorry.
10  Could you repeat the first name?
11        MR. BRUCE:  Jill.
12        MS. LIGHTFOOT:  Okay.  Sorry.
13        THE WITNESS:  Jill Tracy.
14  BY MR. BRUCE:
15    Q.   Did you understand that those members of
16  the Illinois House were a member of the Illinois
17  House Redistricting Committee?
18    A.   No.
19    Q.   This is the first time you're learning of
20  it?
21    A.   Yes.
22    Q.   All right.  Did you ever at any time
23  appear before any House Redistricting Committee
24  yourself?

Page 115

1    A.   No.
2    Q.   Did you understand that House
3  Redistricting Committee meetings were held all over
4  the state of Illinois?
5    A.   Yes.
6    Q.   Okay.  And did you ever make any attempts
7  to attend any of those committee hearings?
8    A.   No.
9    Q.   Did anyone on your behalf ever attempt to
10  attend those committee hearings?
11    A.   I'm -- I'm not aware.
12    Q.   All right.  Did you ever attempt to
13  provide any input at any time to any of the House
14  Redistricting Committee meetings?
15    A.   Not that I'm aware of.
16    Q.   You agree with me, sir, there's nothing
17  that would have precluded you or anyone on your
18  behalf to do so?
19        MS. LIGHTFOOT:  Object to the form,
20  foundation.  It mischaracterizes the rules of that
21  committee.
22        MR. BRUCE:  You can go ahead and answer
23  the question.
24        THE WITNESS:  And I need it restated,

Page 116

1  please.
2         (Record read.)
3         MS. LIGHTFOOT:  Same objections.
4  BY THE WITNESS:
5    A.   Yes.
6  BY MR. BRUCE:
7    Q.   Similar line of questions with respect to
8  the -- did you understand that there was a Senate
9  Redistricting Committee?  Did you know that or not?
10    A.   Yes.
11    Q.   And did you understand that the Senate
12  Districting -- Redistricting Committee met and had
13  meetings all over the state of Illinois?
14    A.   Yes.
15    Q.   And did you ever make any attempt to go to
16  any of those committee meetings?
17    A.   No.
18    Q.   Did you understand that they were taking
19  input from various interests in terms of
20  information to form the making of the map?
21    A.   Yes.
22    Q.   And is -- Is there any reason that would
23  have precluded you or any representative on your
24  behalf from attending those Senate Redistricting

Page 117

1  Committee meetings?
2         MS. LIGHTFOOT:  Same objections; assumes
3  facts not in evidence, foundation, mischaracterizes
4  the rules of the committee.
5  BY THE WITNESS:
6    A.   And the answer is no.
7  BY MR. BRUCE:
8    Q.   Did you ever at any time go on the
9  Illinois Redistricting Committee website?
10        MS. LIGHTFOOT:  Object to the form of the
11  question?  Are you asking if he went on the --
12        MR. BRUCE:  Online.
13        MS. LIGHTFOOT:  -- individual committees'
14  websites?
15        MR. BRUCE:  Yeah.
16        MS. LIGHTFOOT:  Okay.
17  BY THE WITNESS:
18    A.   I don't recall.
19  BY MR. BRUCE:
20    Q.   All right.  Did you know that there was a
21  website for the redistricting committees that asked
22  for input with respect to the maps?
23    A.   Yes.
24    Q.   And is there any -- you could have gone on

Page 118

1 there and put your input in about your concern
2 about Madison and Bond County?
3    A. Yes.
4    Q. And you did not do so; is that correct?
5      MS. LIGHTFOOT: Object to the form,
6 foundation, assumes facts not in evidence.
7 BY THE WITNESS:
8    A. And I -- I did not.
9 BY MR. BRUCE:
10    Q. Okay. Any reason why not?
11    A. Well, we only had -- we -- this thing
12 happened on Friday and they were going to vote on
13 Sunday.
14    Q. Well, you had knowledge in the spring
15 about what the districts were being considered, the
16 lines; is that true?
17    A. Not --
18      MS. LIGHTFOOT: Object to the form,
19 mischaracterizes his prior testimony.
20 BY THE WITNESS:
21    A. Not that -- not the Madison County/Bond
22 debate. That's -- those are totally different --
23 those are totally different map drawings.
24

Page 119

1 BY MR. BRUCE:
2    Q. When you represented the 19th Congressional
3 District for years, were there any counties that
4 were split?
5    A. Yes.
6    Q. Which ones?
7    A. Madison, Adams, Sangamon. We're
8 talking -- I'm getting the 20th and the 19th --
9 I --
10    Q. All right. Do you want to correct your
11 answer?
12    A. I do want to correct my answer.
13    Q. Okay. Let's start at the beginning.
14    A. With the 19th.
15    Q. Okay.
16    A. Which district?
17    Q. Okay. Why don't we start at the
18 beginning? Let's go chronologically.
19      At some point in time, you first
20 represented the 29th and then there was some
21 redistricting and you represented the 19th?
22    A. Yes.
23    Q. When you represented the 20th Congressional
24 District here in the state of Illinois, were there

Page 120

1 any of the counties that you represented in which
2 the Congressional district divided the counties?
3    A. Yes.
4      MS. LIGHTFOOT: Object to the -- object to
5 the form, relevance.
6 BY MR. BRUCE:
7    Q. Which -- which counties were those?
8    A. Madison, Adams, Sangamon. I think that's
9 it.
10    Q. Okay. With respect to the
11 19th Congressional District, when you represented
12 that district, were there any counties which were
13 divided?
14    A. Well, I --
15      MS. LIGHTFOOT: Object -- hold on. Object
16 to the form, relevance.
17 BY THE WITNESS:
18    A. First of all, I still represent it, so
19 it's --
20 BY MR. BRUCE:
21    Q. I misspoke. I think you understood my
22 question, but I misspoke, so let me ask you again.
23      With respect to the 19th Congressional
24 District, are there any counties that are divided

Page 121

1 by that Congressional district?
2      MS. LIGHTFOOT: Objection; relevance.
3 BY THE WITNESS:
4    A. Yes.
5 BY MR. BRUCE:
6    Q. Which ones?
7      MS. LIGHTFOOT: Objection; relevance.
8 BY THE WITNESS:
9    A. Madison, Jersey, Greene.
10 BY MR. BRUCE:
11    Q. I'm sorry. What was the last one?
12    A. Greene.
13    Q. Oh. Greene County?
14    A. Yes.
15      Sangamon, Dwight, Edwards, Saline,
16 Williamson -- Williamson County. I think that's
17 it.
18      (Shimkus Deposition Exhibit No. 4
19      marked for identification, 9-29-11.)
20 BY MR. BRUCE:
21    Q. And -- and I have included in the package
22 of exhibits Exhibit Number 4, if you want to turn
23 the page. And let me just establish, is that the
24 current 19th Congressional District that you

Page 122

1  represent?
2      MS. LIGHTFOOT: Object to the form.
3  BY THE WITNESS:
4      A. Yes.
5  BY MR. BRUCE:
6      Q. Congressman, at any time did you or anyone
7  on your behalf submit any maps or alternative maps
8  to any member of the Illinois legislature?
9      A. No.
10     Q. You could have done so had you chosen to
11 do so; is that true?
12     MS. LIGHTFOOT: Object to the form,
13 foundation, mischaracterizes the rules of the
14 separate redistricting committees.
15 BY THE WITNESS:
16     A. Yes.
17 BY MR. BRUCE:
18     Q. Okay. And certainly your lawyers were
19 involved in your representation regarding the
20 drawing of the map before the map was finalized; is
21 that true?
22     MS. LIGHTFOOT: Hold on. Object to the --
23 object to the form of the question. And given the
24 scope of the question, I'm going to object on

Page 123

1  privilege and instruct the witness not to answer.
2  He can answer as to when it was, but your
3  question -- the basis for my objection is your
4  question assumes content of what the scope of the
5  representation is now. That's the basis for my
6  objection.
7      MR. BRUCE: Yeah. I don't understand the
8  objection.
9  BY MR. BRUCE:
10     Q. Sir --
11     A. My --
12     Q. Go ahead.
13     A. I have -- I don't know. That's my answer.
14     Q. Okay. Well, I think you told me that you
15 already had lawyers at the time that you were
16 meeting with Congressman Costello in the initial
17 meeting; is that true?
18     A. My -- the answer is that the -- the -- the
19 Committee for a Fair and Balanced Map had hired
20 counsel.
21     Q. Okay. The Committee for a Fair and
22 Balanced Map had already retained counsel by the
23 time you had your initial meeting with Congressman
24 Costello; is that true?

Page 124

1      A. Yes.
2      Q. All right. And did those lawyers --
3  they're the same lawyers that are representing you
4  here today, right?
5      A. I think so.
6      Q. Right.
7          And you were communicating with those
8  lawyers as far back as when you initially met with
9  Congressman Costello; is that true?
10     A. I wasn't personally doing a lot of
11 communication with the attorneys.
12     Q. Okay. Was someone on your behalf
13 communicating with the lawyers that represented you
14 and the committee at the time that you met with
15 Congressman Costello for the first time regarding
16 the map?
17     A. Yes.
18     Q. Okay. And my question was, do you agree
19 with me that the lawyers for the committee or your
20 own lawyers could have submitted maps which were
21 different than the maps which were ultimately
22 adopted by the legislature in Springfield?
23     MS. LIGHTFOOT: Object to the form,
24 foundation.

Page 125

1  BY THE WITNESS:
2      A. Yes.
3  BY MR. BRUCE:
4      Q. And they did not do so, to your knowledge;
5  is that true?
6      MS. LIGHTFOOT: Object to the form,
7  foundation.
8  BY THE WITNESS:
9      A. I don't know.
10 BY MR. BRUCE:
11     Q. Okay. Have you ever seen a map that they
12 submitted to the Illinois legislature or any of its
13 committees?
14     MS. LIGHTFOOT: Object to the form,
15 foundation.
16 BY THE WITNESS:
17     A. I have not seen any map.
18 BY MR. BRUCE:
19     Q. Now, have you read the complaint that has
20 been filed by the committee in this case?
21     A. Yes.
22     Q. And was there any aspect of that complaint
23 that you read that you disagreed with?
24     A. No.

Page 126

1    Q.  Okay.  Now, have you ever seen a map which
2  has proposed -- well, strike that.
3        Is every member of the committee for a
4  fair and balanced map a member of the Republican
5  party?
6    A.  I don't know.
7    Q.  Well, in terms of the named Plaintiffs to
8  the lawsuit, can you tell me, are those members all
9  Republican?
10    A.  I don't know.
11        (Shimkus Deposition Exhibit No. 2
12        marked for identification, 9-29-11.)
13  BY MR. BRUCE:
14    Q.  Well, let's look.  If you look at
15  Exhibit 2, I've the attached the complaint, and
16  there's a caption there on the first page.  And
17  just take a look at that, and can you tell me --
18    A.  This here?
19        MS. LIGHTFOOT:  This.
20  BY MR. BRUCE:
21    Q.  -- whether or not any of those people are
22  Democrats?
23    A.  Well, can I just tell you who I know are
24  Republicans?

Page 127

1    Q.  That would be fine.
2        MS. LIGHTFOOT:  No.
3        THE WITNESS:  No?
4        MS. LIGHTFOOT:  If he's amending his
5  question, then you can.
6  BY MR. BRUCE:
7    Q.  Yeah, yeah.  I'm just trying to get you
8  out of here, Congressman.  Tell me what you know
9  about the political affiliation of the parties to
10  the lawsuit.
11    A.  Judy Biggert is a Republican.  Bob Dold is
12  a Republican.  Randy Hultgren is a Republican.
13  Adam Kinzinger is a Republican.  Donald Manzullo is
14  a Republican.  Peter Roskam is a Republican.  Bob
15  Schilling is a Republican.  Aaron Schock is a
16  Republican.  John Shimkus is a Republican.  Joe
17  Walsh is a Republican.  I don't know Ralph Rangel.
18  I don't know Lou Sandoval.  I do not know Luis
19  Sanabria.  I don't know Michelle Caballero.  I
20  don't know Edmund Brezinski.  And I do not know
21  Laura Waxweiler.
22    Q.  And where did those people come from?
23    A.  I don't know.
24    Q.  And how did they get involved in the case?

Page 128

1    A.  I don't know.
2    Q.  Have you ever seen a map that's been
3  proposed by the committee and the Republican
4  Congressmen?
5        MS. LIGHTFOOT:  Object to the -- to the
6  form, vague.
7  BY THE WITNESS:
8    A.  We --
9  BY MR. BRUCE:
10    Q.  Do you understand my question?
11    A.  We -- I think -- we filed a map with the
12  injunction.
13    Q.  Okay.
14    A.  And that is the map I've seen.
15    Q.  Okay.  And have you seen the
16  demographic -- is that map attached to your
17  deposition as Exhibit Number 5?
18        MS. LIGHTFOOT:  I'm going to object to the
19  form of the question because it mischaracterizes
20  Exhibit Number 5.
21        (Shimkus Deposition Exhibit No. 5
22        marked for identification, 9-29-11.)
23  BY MR. BRUCE:
24    Q.  Sir, I don't want to mischaracterize

Page 129

1  anything.  Is that the map that you're referring to
2  that was attached to the preliminary injunction?
3        MS. LIGHTFOOT:  The problem with your
4  question, counsel, is there's a couple -- there's
5  two -- at least two maps.
6        MR. BRUCE:  Well, all right.
7  BY MR. BRUCE:
8    Q.  There's a map that somebody has
9  conveniently termed the Fair Congressional on the
10  right side.  Do you see that?
11    A.  I do.
12    Q.  Okay.  Who drew that map?
13        MS. LIGHTFOOT:  If -- objection.  If the
14  basis of your -- your basis for an answer to that
15  question stems from information that was
16  communicated to you by -- in the context of a
17  privileged communication with counsel, then I'm
18  going to instruct you not to answer.  But if you
19  otherwise have a different independent basis for
20  being able to answer that question, feel free.
21  BY THE WITNESS:
22    A.  I have no independent basis other than
23  knowing what was provided based upon
24  attorney-client privilege in the maps presented in

Page 130

1  the court case.
2  BY MR. BRUCE:
3      Q.  So this map was given to you -- to you by
4  your lawyers?
5          MS. LIGHTFOOT:  Object to the form and
6  mischaracterizes his testimony, Mr. Bruce.
7  BY MR. BRUCE:
8      Q.  Well, it's one way or the other, sir.
9          MS. LIGHTFOOT:  No.
10 BY MR. BRUCE:
11     Q.  I want to know, where did the map come
12 from?  Did it come from your lawyers or someone
13 else?
14         MS. LIGHTFOOT:  Object to the form, and I
15 think you've asked that question now twice.
16         MR. BRUCE:  No, no, no, no, no.  We're
17 going to get into this, so we're going to get an
18 answer to my question.
19         MS. LIGHTFOOT:  Fine.  You're going to get
20 an answer -- get an answer --
21         MR. BRUCE:  Yeah.  We're going to get an
22 answer, and we're going to suspend the deposition.
23 BY MR. BRUCE:
24     Q.  Sir, did you get that map from your

Page 131

1  lawyers or someone else?  That's the first question.
2          MS. LIGHTFOOT:  Object to the form,
3  foundation, mischaracterizes his testimony, and --
4          MR. BRUCE:  What --
5          MS. LIGHTFOOT:  Hold on, Mr. Bruce.
6      It assumes facts not in evidence.
7          MR. BRUCE:  Okay.  I don't understand your
8  foundation objection.  I don't understand your
9  assuming facts not in evidence objection.  Those
10 are meaningless objections to that question.
11         MS. LIGHTFOOT:  Well, they're not.
12         MR. BRUCE:  Okay.
13         MS. LIGHTFOOT:  They're not.
14 BY MR. BRUCE:
15     Q.  Okay.  Sir --
16         MS. LIGHTFOOT:  They're not.
17 BY MR. BRUCE:
18     Q.  -- if you look on the right-hand side --
19         MS. LIGHTFOOT:  The question is defective,
20 and I've pointed out the reason for my basis.
21         MR. BRUCE:  Well, we're going to get into
22 it.
23 BY MR. BRUCE:
24     Q.  Sir, on the right-hand side there's a map

Page 132

1  of Exhibit 5.  It says the Fair Congressional Map.
2  Do you see that?
3      A.  Yes.
4      Q.  All right.  And you told me that that was
5  filed with your preliminary injunction that you're
6  a party to; is that correct?
7      A.  I believe so, yes.
8      Q.  Okay.  And I'm asking you, where did that
9  map come from?  Who gave you that map?  Was it from
10 your lawyers, or was it from someone else?
11         MS. LIGHTFOOT:  Same objection; assumes
12 facts not in evidence.
13 BY THE WITNESS:
14     A.  This is a map presented in our court case
15 in response to the flawed Democrat gerrymandering
16 map.
17 BY MR. BRUCE:
18     Q.  That doesn't answer my question.  I'll
19 rephrase it.  I can't make it more simple than I
20 can, but I'll keep trying.
21         Where did that map come from?
22     A.  This map --
23         MS. LIGHTFOOT:  Object to the form.
24

Page 133

1  BY THE WITNESS:
2      A.  This map was filed in our court case and
3  part of the injunction.
4  BY MR. BRUCE:
5      Q.  Okay.  I understand that it was filed as
6  part of the injunction.  That is not the question,
7  respectfully, I'm asking.  I'm not asking you where
8  it was filed.  I just want to be clear so that we
9  don't have a problem --
10     A.  Well --
11     Q.  Excuse me.  I'm trying to help you answer
12 my question.  I am not asking you where this map
13 was filed.  I'm not asking that question.  I'm
14 asking you where this map came from.  Can you
15 answer that question?
16     A.  I have -- I do not know.
17     Q.  Okay.  As you sit here today, you don't
18 know where -- the map that's entitled the Fair
19 Congressional Map which is Exhibit 5 to your
20 deposition, you don't know where that came from; is
21 that true?
22         MS. LIGHTFOOT:  Object to the form,
23 foundation, mischaracterizes his testimony.
24