IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COMMITTEE FOR A FAIR AND BALANCED MAP, et al.,

Plaintiffs,

vs.

ILLINOIS STATE BOARD OF ELECTIONS, et al.,

Defendants.

No. 11 C 5065

Chicago, Illinois
October 20, 2011
9:30 A.M.

TRANSCRIPT OF PROCEEDINGS - Motion
BEFORE THE HONORABLE JOAN HUMPHREY LEFKOW

APPEARANCES:

For the Plaintiffs: MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
BY: MS. LORI E. LIGHTFOOT
MR. THOMAS V. PANOFF

For the Defendants: OFFICE OF THE ILLINOIS ATTORNEY GENERAL
100 West Randolph Street
11th Floor
Chicago, Illinois 60601
BY: MR. JONATHAN A. ROSENBLATT

POWERS, ROGERS & SMITH
70 West Madison Street
Suite 5500
Chicago, Illinois 60602
BY: MR. DEVON C. BRUCE

PAMELA S. WARREN, CSR, RPR
Official Court Reporter
219 South Dearborn Street
Room 1928
Chicago, Illinois 60604
(312) 294-8907

(Proceedings had in open court.)

THE CLERK: 11 C 5065, Committee For A Fair And Balanced Map versus Illinois State Board of Elections.

MS. LIGHTFOOT: Good morning, your Honor. Lori Lightfoot and Tom Panoff on behalf of the plaintiffs.

THE COURT: Good morning.

MR. BRUCE: Good morning, your Honor. Devon Bruce on behalf of the defendants.

THE COURT: Good morning.

MR. ROSENBLATT: Good morning, your Honor. Jon Rosenblatt from the Office of the Illinois Attorney General on behalf of defendants.

THE COURT: Okay. Good morning.

All right. The Committee wants to take three depositions. And the issues are timeliness and relevance.

MR. BRUCE: Timeliness, relevancy, and prejudice, your Honor.

THE COURT: And prejudice. Okay.

Well, let's start with the movants.

MR. BRUCE: Certainly. Briefly, your Honor, we had -- you had issued an order originally, or the panel had, on October -- that all fact discovery was required to be done. In fact oral depositions by October 5th. That was then extended by your order, and that was extended to October 19th.

Now taking a step back, the plaintiffs, we asked them

who they were going to call at trial, and they identified 28 witnesses. And, you know, to be honest, Judge, we have been very diligently trying to depose all those people.

I have tried to understand from the plaintiffs who they are going to call at trial. Some of those people they have said they are going to withdraw. And we have taken -- and I listed all -- a number of those depositions that we have taken.

Three of them, due to the plaintiffs's own schedules, couldn't get scheduled within that time period. And for those three as -- out of professional courtesy for the plaintiffs, we said, fine, we'll take those beyond the 19th date.

We at no time ever said we would be willing to get new witnesses which have never been identified. Congressman Jackson, Mayor Larry Morrissey, and Congress -- Former Congressman Lipinski have never at any time been identified in their answers to interrogatories as trial witnesses.

And your order required them to answer interrogatories by September 17th, and they did. They have never amended that. They, to my knowledge, as they stand here today, they have identified these people as witnesses at trial.

Now with that in mind, we are trying to get all these done by the 19th. We had Congressman Costello's deposition yesterday at -- the end of it.

And on Friday afternoon we get word from plaintiffs's

counsel for the first time that they want to take Larry Morrissey's deposition in Rockford. For the first time they want to take the deposition of Congressman Jackson. And they want to take Congressman -- Former Congressman Lipinski's deposition. We hear about that on Monday, keeping in mind the deadline that this Court has already extended once, ends on Wednesday.

All of the dates that they are suggesting are far beyond the date that you have ordered, your Honor. And they are doing this without leave of Court. They are totally doing this in violation of court order. And nothing in their response in any way provides a rationale for that.

I want to get to that timeliness issue. On the timeliness issue, from what I read of their response, they are saying -- and I think this is very telling -- they are saying these people's names just came up in the discovery deposition transcripts and, therefore, we just found about them. And they just came up in the deps, and now we want to take their depositions.

I have two responses to that, Judge, because I have taken every one of their -- plaintiffs's United States congressmen's depositions where these names -- where they want to talk about came up.

First of all, they came up in their own clients's depositions. They claim that this is not something where I am

putting forth a witness, and they take Mr. Smith's deposition and they heard about Mrs. Jones. This is not the fact pattern. These are their witnesses, their clients.

And, shockingly, what we're finding out in this case is Mayer Brown was hired in this case before the map was even passed. That's what Congressman Shimkus told me. Long before -- Congressman Shimkus is the one that first raised in the discovery depositions Congressman Lipinski's name. But he -- he -- they were -- Congressman Shimkus knew back in April when this all came up in April. If they -- they knew about him.

So it isn't -- that's a complete red herring to say, oh, well, they came up in our own clients's deps, and now we want to violate the Court's order without leave of Court when we want to take this man's deposition.

Now with respect to Larry Morrissey's, there is -- I looked last night before coming over here. There is a June 5th Rockford Register Star front page article in the Rockford Register Star where Larry Morrissey, who is the mayor of Rockford, is in the same article as their client Don Manzullo, Congressman Don Manzullo. And he is expressing whatever his opinions are, as if it matters, respectfully, whether Mayor Morrissey, who has nothing to do with drawing a map. Whatever Mayor Morrissey -- but it is in there on June 5th.

And Congressman Manzullo in his dep, you know, Morrissey's name has come up, and Congressman Manzullo said, I

talked to Larry Morrissey right after -- he is outraged -- right after the map came out, which is consistent with the June 5th -- you know, they know about these people, Judge, for months -- months, literally, months before we even started fact -- written discovery.

Now with respect to Congressman Jackson, he has been very vocal. First of all, his name has come up, as they point out in their response, and all of their clients's depositions, his name has come up, your Honor. Again, that's knowledge that they had long before the map came up.

But more importantly, they are citing newspaper articles from -- of Congressman Jackson from September, from September. So why am I hearing now on, you know, three business days -- Friday afternoon is when they say they are going to -- they want Jackson. They are not identifying him as a witness. They are saying, we want to go and take his deposition on very short -- Friday, Monday, Tuesday, Wednesday -- so three business days before your deadline expires when they -- whey they are saying in the response, our reasoning is we knew about it in September.

Your Honor, we're trying --

THE COURT: You have got about two more minutes.

MR. BRUCE: Okay. So that's the issue on timeliness.

THE COURT: Hold on a second.

THE CLERK: If he could just slow down because --

THE COURT: Oh, right.

Can you keep up with him?

THE CLERK: I can't even --

MR. BRUCE: I was trying to hurry up. I know you have got a courtroom full of people.

MS. LIGHTFOOT: Ms. Warren is very able.

MR. BRUCE: So with respect to prejudice, with respect to the relevancy, your Honor, I don't think we need to go there. I think we win hands down on timeliness.

But on -- in terms of relevancy, this Court has recognized, and I started -- and I -- that a lot of this is decided on expert discovery. And when this came up the last time, Ms. Lightfoot identified, you know, some of these people may talk about the -- how they actually intend -- you know, they are actually the map drawers. None of these people are the actual map drawers, but I don't think we need to go there.

And then, lastly, and I think importantly, is prejudice. Your Honor, if they are allowed to go and take this, when does it end? Okay? Do I then get the opportunity to listen to what these people have to say, and then -- for example, what if Congressman Jackson says something that we want to refute or contend with? Do I then call named -- Congressman Davis and go and take Congressman Danny Davis's?

And what -- you know, what about, you know, Tim Johnson, Representative Tim Johnson? I'd want to go and take

his.

I mean, this just goes on and on and on. That's why we have deadlines, and that's why we have been trying to comply.

And, lastly, and I think this is important, and we would also, I would submit, and I put this in my papers, we may or may not, depending on what they say, submit that to the experts in this case. And our main expert is going as soon as we walk out of this courtroom. And so -- and we have got to submit that. And then they -- then they are going to say, we want to go take the dep. And then we -- and why is it relevant?

And so, lastly, your Honor, and this is an issue that I saw at the end of their response, which I thought was kind of shocking and -- I'll finish with this. They seem to be suggesting in their papers that by now throwing out subpoenas in violation of this court order, that that is in some way a supplement to their answers to interrogatories which were due by court order on September 17th, and that now they are going to call these people at trial. Should you grant my motion, they are going to call them as trial witnesses even though they have never told me that they are trial witnesses. And I can't depose them.

I mean, so that seems to be suggesting they're, again, asking this Court to -- I mean, they are willy-nilly violating

your court orders. I mean, that's shocking.

So I would suggest, your Honor, and we would respectfully request, that we stop the oral fact discovery, with the exception of ones -- and I'm not -- I did say that I don't have a problem with taking these people because, you know, we're trying to work together and get them done. These people can't -- these other ones I never said at any time unidentified people who have never been identified we're going to go on.

So that's -- thank you, your Honor.

THE COURT: All right, Ms. Lightfoot.

MS. LIGHTFOOT: Very briefly, your Honor. Here the practical issue is this. One, I want to address a couple points that Mr. Bruce, I think, got wrong.

One is if you look at the scheduling order, the time in which trial witnesses have to be identified is November 7th. What they did is they served us with typical discovery saying, who do you know who has information about it? And we answered it whenever we answered it.

We have supplemented it. And I suspect we will probably supplement it again. We have a continuing obligation to do so.

But the truth is the real date when people make decisions as to when they are going to have witnesses for trial is November 7th, which is the date in which the pretrial order

is due.

We're sill sorting through a lot of different information. And I don't think the scheduling order -- and, frankly, in 20-plus years of practicing in front of this Court, I don't think that the -- a schedule of -- interrogatories or discovery that's served ahead of time says that three, four months out from when your trial is, do you have to identify every single witness that you're going to possibly call at trial, particularly when you don't know that.

The issue that they --

THE COURT: Okay. Well, tell me how important it is that you get these witnesses.

MS. LIGHTFOOT: Well, I mean, here is the practical issue, your Honor. We could have simply gotten affidavits from these witnesses and attached them to our permanent injunction motion, and then we would have heard a similar kind of hue and cry about prejudice, surprise, oh, my God, this is terrible, they should be stricken.

We thought the better course, frankly, because we generally actually have been getting along fairly well, was to notice them up, give everybody an opportunity to ask whatever questions that they wanted, and then proceed that way, rather than simply affixing a detailed affidavit from a witness that neither side had previously deposed.

And if they want it that way, we can have it that

way. But it didn't seem to make practical sense for us because, frankly, we anticipated a bunch of motion practice about that.

But to your issue of how important are they, let me run through this. Number one, with respect to Mayor Morrissey -- and also let me just preface this by saying this: These are three -- two current and one former elected official. Frankly, we were giving some deference and respect to them. We didn't want to -- yeah, we -- Congressman Lipinski's name had surfaced before, but we felt like because we anticipated getting a motion like this, we wanted to have a good faith basis before we, frankly, called him in and wasted his time.

So once we got the deposition testimony, the last of which was on October 10th, I made arrangements to talk to Congressman Lipinski to understand what he would say and made the determination at that point that we would in fact depose him.

And then we were going back and forth with him as a courtesy to figure out if there is a convenient time. He said, I don't want a subpoena, just let me know if you want me, and I'll show up whenever. That's what we did.

The next -- and then we traded phone calls back and forth last week. I finally got a hold of him again on Monday. He tells me Mike Kasper, one of the lawyers for the defendants

in this case, would actually be handling things for him.

So I promptly sent an email to Mr. Kasper and --

THE COURT: You put that in your motion. But really I'm focused on proof in the case --

MS. LIGHTFOOT: So -- understood.

THE COURT: For example, Jesse Jackson has been vocal in opposition to this map, but he didn't have -- he didn't draw the map.

MS. LIGHTFOOT: Well --

THE COURT: Every congressman has a political opinion about it.

MS. LIGHTFOOT: Sure. But I believe, your Honor, if you looked carefully at what he has said, and we have, and obviously in talking to our clients what we understand is that Congressman Jackson actually was involved in aspects of drawing this map.

And I'm mindful of the Court's order regarding the motion to compel where it said, if there are irregularities in the way in which the map was drawn -- and I'm paraphrasing obviously -- that that's relevant.

We believe that Congressman Jackson will provide us with information about the manner in which the process was deviated from the norm that go to this issue of irregularity.

With respect to Congressman Morrissey, I believe he will testify about the community of interest issue, which we

did identify in our complaint, and how it is that Rockford is now divided literally in half between two separate congressional districts. And the minority population of Rockford now is going to be in -- under the adopted plan going to be on the map --

THE COURT: Now let's talk about Lipinski.

MS. LIGHTFOOT: And I think Lipinski definitely goes directly to the issue of intent. As your Honor knows, we have alleged in our complaint with respect to Congressional District 3 in the adopted plan, if that was drawn in a way to benefit a white incumbent. The white incumbent is Congressman Lipinski's son.

The information has come out through the depositions, and other information that we have gathered, is that Congress- -- Former Congressman Lipinski was intimately involved in figuring out what the actual parameters of that district would be.

THE COURT: Okay. But how does it affect the Hispanics? Because we all know that that's what it is all about is for clarification of --

MS. LIGHTFOOT: If affects the Hispanics because, as we allege in our complaint, and as we allege in our preliminary injunction, and we allege in our permanent injunction motion, if you look at the changes between Congressional District 3, which is on the southern part of the earmuff, and Congressional

District 5, which is in the northern part of the earmuff, what was done in constructing the new Congressional District 4 of the earmuff was to excise significant portions of the Hispanic population from CD-3 on the south and to super pack them into CD-4. Same was done with the Hispanic population on the north in CD-5.

And we believe not only were they done to pack more Hispanics into CD-4, but also to take out Hispanic population from CD-3 and CD-5. And particularly --

THE COURT: Do you have any reason to believe that there would have been a more likely -- a greater likelihood that Hispanic -- a second Hispanic congressman or woman would have been elected in spite of all that?

MS. LIGHTFOOT: Well --

THE COURT: Is that what you are trying to prove?

MS. LIGHTFOOT: Two things though.

THE COURT: Could have been, not would have been.

MS. LIGHTFOOT: What we believe, frankly, your Honor, is if you look at the natural population growth in the city and the county, in the area that CD-3 covered, that the -- and unpacking the earmuff, it absolutely would have been close to a majority or a majority Hispanic district.

Frankly, the alternative CD-3 that we had drawn in our map covers exactly that territory.

THE COURT: Okay. This is my assessment after hearing

you and basically what I felt after reading. I do think it is untimely. But in light of your -- you know, your really close or tight schedule here, you know, that's a factor. But I would be willing to grant you the two depositions of Mayor Morrissey and Lipinski.

But as for Jesse Jackson and what -- what you are saying in your papers is that he has been very vocal about this, when now you're saying that he had something to do with it. But I don't think that -- you know, that's not going to be -- it is pretty tangential. We have -- remember we have two days for this hearing.

MS. LIGHTFOOT: Understood, your Honor.

THE COURT: So --

MS. LIGHTFOOT: Well, your motion --

MR. BRUCE: And the --

THE COURT: Your motion is granted as to two, and denied as to Congressman Jackson.

MS. LIGHTFOOT: Actually it would be opposite -- the other way --

MR. BRUCE: I just --

MS. LIGHTFOOT: -- around, your Honor.

THE COURT: Sorry?

MS. LIGHTFOOT: It is their motion to quash --

THE COURT: Oh, right. Right.

MR. BRUCE: Okay. Can I get a couple points of

clarification? I just want to make sure Ms. Lightfoot and that -- the plaintiffs's team is not going to be doing this anymore. They are not issuing --

THE COURT: Okay.

MR. BRUCE: -- anymore subpoenas, and -- number one.

And, number two, is I want to be clear that -- something that she said really troubled me. I want to be clear that they are not going to be disclosing, either trying to throw subpoenas out for people that have not been identified in answers to interrogatories or they are coming up with new names of people, because that would be highly prejudicial.

THE COURT: Okay. The ground rule is that you can't -- you can't name new witnesses and just subpoena them for court without a deposition.

MS. LIGHTFOOT: Your Honor, you're going to --

THE COURT: Okay. We have to stop at some point because this is going to be a huge amount of material.

I have already told -- we have told you that we don't think these witnesses are going make a heck of a lot of difference. I mean, maybe we're wrong, but that's three judges who have talked about this and feel that way.

So, you know, you could go on and on and on on this, but --

MS. LIGHTFOOT: So you're -- in other words, you're going to -- you're telling us that if, for example, we have a

witness that has given us information, that we are precluded from including an affidavit in our permanent injunction motion from that witness?

Your Honor, given that the scheduling order says that witnesses have to be disclosed by November 7th, that's the -- that's the --

THE COURT: Well --

MR. BRUCE: Your Honor --

MS. LIGHTFOOT: -- date that we have been operating under.

MR. ROSENBLATT: Your Honor, we asked in interrogatory for that information. If they had that information, they should have turned it over. And if they are going to now use a statement without allowing us any opportunity to do discovery on --

MR. BRUCE: Shocking.

THE COURT: I don't know what your -- I don't know what your plan was when you said disclose witnesses by November 7th. I would assume that -- I mean, typically that means you have already done the depositions and you have pared down who the people are that you're going call --

MR. BRUCE: Absolutely.

THE COURT: -- from the discovery you have had.

All right. I'm out of time, so --

MR. ROSENBLATT: Thank you, your Honor.

MR. BRUCE: Thank you, your Honor. We appreciate your time.

MS. LIGHTFOOT: Well, we'll come in on a motion and revisit this issue, your Honor.

THE COURT: All right.

(Which concluded the proceedings in the above-entitled matter.)

CERTIFICATE

I HEREBY CERTIFY that the foregoing is a true, correct and complete transcript of the proceedings had at the hearing of the aforementioned cause on the day and date hereof.

/s/Pamela S. Warren — October 21, 2011
Official Court Reporter — Date
United States District Court
8 Northern District of Illinois
Eastern Division